IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | **No. 17 CR 319** |
| **v.** | ) | **Honorable John Robert Blakey** |
| | ) | |
| **KEVIN MILLER, JR., et al.** | ) | |

# DEFENDANT KEVIN MILLER'S RULE 33 MOTION FOR A NEW TRIAL AND, IN THE ALTERNATIVE, RULE 17(c) MOTION FOR AN EVIDENTIARY HEARING

This case presents yet another chapter in Attorney Beau Brindley's storied reputation in this courthouse. While representing DEFENDANT KEVIN MILLER, Attorney Brindley was under DOJ investigation —a fact Brindley and the government knew but failed to disclose to either Mr. Miller or the Court. Our circuit's law is clear: An undisclosed and unwaived conflict of interest violates Mr. Miller's Sixth Amendment right to conflict-free counsel. *See Lafuente v. United States*, 617 F.3d 944 (7th Cir. 2010). Defendant Miller, by and through undersigned counsel MIANGEL C. CODY of TDC LAW OFFICE, respectfully moves for a new trial based upon newly discovered information, pursuant to Rule 33 of the Federal Rule of Criminal Procedure.[1] The defense further moves for post-trial discovery and an evidentiary hearing to perfect the record concerning issues of fact raised herein. Fed. R. Crim. P. 17(c). In

[1] It is undersigned counsel's profound (and hopefully realistic) desire to resolve this case short of a retrial. Undersigned counsel has discussed that possibility with the government.

support of this request, we state as follows:

## I. FACTUAL BACKGROUND

### A. The Charges, Commencement of Brindley's Representation, and Pretrial Proceedings Against Kevin Miller

The government's charges are relatively straightforward: Defendant Kevin Miller was charged with possessing with the intent to distribute at least 400 grams of fentanyl during a single drug transaction on April 13, 2016, in violation of Title 21, U.S. Code, Section 841(a)(1). On May 18, 2017, attorney Beau Brindley appeared on behalf of Defendant Miller. ECF No. 37. At its inception, former Assistant United States Attorney Matthew Kutcher represented the United States in the charges against Mr. Miller; a fact that will become vitally important.

Attorney Brindley filed a limited number of pretrial motions on Miller's behalf, mostly related to bond conditions and scheduling continuances. One continuance motion is of particular importance: On January 28, 2019, Brindley filed an unopposed motion to continue Mr. Miller's trial date, stating:

> On April 8, 2019, both counsel for the government and the defense may be engaged in trial in U.S. v. Ferguson (18 CR 858). . . .The **undersigned has discussed this matter with AUSA Kutcher for the government** and he does not oppose this motion.

ECF No. 223 at 1 (emphasis added). Your Honor granted the unopposed continuance when counsel appeared before the Court at a motion hearing on February 7, 2019. Mr. Miller's presence was waived at Brindley's request. The timing of this court appearance and the waiver of Mr. Miller's presence are also vitally important, as will be discussed below.

**B. The DOJ Investigation of Beau Brindley in *United States v. Ferguson*, 18 CR 858 and *United States v. Ferguson*, 18 CR 734**

The instant case against Mr. Miller is not the only case in which attorneys Beau Brindley and AUSA Matthew Kutcher were opposing counsel. Indeed, while Mr. Miller's case was pending, the government indicted a man named Terry Ferguson. Ferguson was charged with drug and gun violations that were unrelated to Miller's case. The cases against Terry Ferguson were docketed at 18 CR 858 and 18 CR 734.[2] Brindley represented defendant Ferguson and AUSA Kutcher represented the government in both *Ferguson I* and *Ferguson II* prosecutions.

Sometime in 2018, the government began investigating Attorney Brindley in the *Ferguson* cases. We know this fact for two reasons:

***First,*** ATF Special Agent Christopher Labno confirmed the investigation *to attorney Brindley* during the agent's direct examination in *Ferguson I,* which is pending before Judge Kennelly. The government was investigating whether Brindley – along with his client Terry Ferguson – had stolen settlement funds that were to be kept in a trust account for Ferguson's niece and whether Brindley had obstructed justice.[3] Under oath at Terry Ferguson's sentencing, ATF Special Agent Christopher Labno testified as follows concerning his 2018

---

[2] For clarity throughout this motion, undersigned counsel will refer to *United States v. Ferguson*, 18-cr-734-1, (N.D. IL) as "Ferguson I". Counsel will refer to *United States v. Ferguson*, 18-cr-858, (N.D. IL) as "Ferguson II". In both *Ferguson I* and *Ferguson II*, attorney Beau Brindley represented Terry Ferguson and AUSA Matther Kutcher represented the United States.

[3] The allegations into Beau Brindley were the subject of a Chicago Tribune article: *"Did You Just Pick Up Your Law License at Walmart?" Sentencing in Gun Case Veers into Lawyer's Conduct, Funds Allegedly Stolen from Girl Raped by Monk*, Chicago Tribune (Oct. 20, 2023), https://www.chicagotribune.com/2023/10/20/did-you-just-pick-up-your-law-license-at-walmart-sentencing-in-gun-case-veers-into-lawyers-conduct-funds-allegedly-stolen-from-girl-raped-by-monk/ (last accessed Nov. 29, 2024).

questioning of Ferguson and the DOJ's ongoing investigation of attorney Brindley:

| | |
|---|---|
| Attorney Beau Brindley: | Q. Certainly you made it clear in this discussion that you wanted or one of the things you wanted was for him [Defendant Ferguson] to give some kind of information about his lawyer, me, right? |
| ATF Special Agent Labno: | A. We asked him about multiple people. You were included, yes, sir. |
| Attorney Beau Brindley: | Q. Okay. And you said you wanted him to potentially proactively cooperate against his lawyer, right? |
| ATF Special Agent Labno: | A. You, among others, yes, sir. |
| Attorney Beau Brindley: | Q. Okay. Agent Labno, first of all, did you have authorization from the Department of Justice to be investigating a lawyer in this district when you went out there? |
| ATF Special Agent Labno: | A. We had received permission from main Justice. I honestly don't remember the date. |

*See United States v. Ferguson*, 18-cr-734-1, (N.D. IL), ECF No. 508 at 276.

***Second***, we also know the NDIL U.S. Attorney's Office was investigating Brindley because the government – and specifically AUSA Kutcher – said so in a 2019 filing when it moved to disqualify Brindley as counsel in *Ferguson II,* which was pending before Judge Tharp. The government unequivocally stated in a 2019 filing:

> The government continues to investigate the incident, and, as a result of the text messages, Mr. Brindley is a subject of that investigation. **The fact that Mr. Brindley is a subject of the investigation creates a conflict of interest and at a minimum requires that defendant Terry Ferguson knowingly waives such a conflict.** *United States v. Horton*, 845 F.2d 1414, 1419 (7th Cir. 1988) (discussing *United States v. Cancilla*, 725 F.2d 867, 870

> (2d Cir. 1984)); *United States v. Balzano*, 916 F.2d 1273, 1293 (7th Cir. 1990 ("[W]e have held that an "actual conflict of interest" exists only where there is a danger that the defense attorney would ineffectively represent his client because of fear that authorities might become aware of the attorney's own misconduct if he undertook effective representation.").

*Ferguson II*, 18cr858, ECF No. 74 at 7, n. 3.

There can be no doubt that our district's US Attorney's Office knew its investigation of Brindley created an "actual conflict of interest" because it made – and won – that exact argument to disqualify Brindley in *Ferguson II*. As the government argued in its February 5, 2019 *Ferguson II* filing: **"The fact that Mr. Brindley is a subject of the investigation creates a conflict of interest and at a minimum requires that defendant [ ] knowingly waives such a conflict."** *Id.* (emphasis added).

Shockingly, just two days after the government (specifically, AUSA Kutcher) filed its 2/5/2019 Motion to Disqualify Brindley in *Ferguson II,* attorney Brindley and AUSA Kutcher appeared before Your Honor on the defense's unopposed motion to continue Mr. Miller's trial. *See* ECF No. 225. According to the docket, Your Honor granted the unopposed trial continuance:

> MINUTE entry before the Honorable John Robert Blakey: Motion hearing held on 2/7/2019. Defendant, Kevin Miller, Jr.'s appearance waived by defense counsel. Defendant's unopposed motion to continue trial [223] is granted. Jury trial previously set for 4/15/2019 is reset for 9/16/2019 at 10:00 a.m. in Courtroom 1203.

Indisputably, counsel for the government and attorney Brindley both knew of the actual conflict of interest when they appeared before Your Honor on February 7, 2019. Yet,

neither lawyer informed this Court.[4]

### C. The Trial of Kevin Miller

After the government filed *and won* its February 2019 motion to disqualify Brindley in *Ferguson II,* Brindley continued to represent Mr. Miller in plea negotiations with the government and appeared at multiple pretrial status hearings before Your Honor. At no point did Brindley disclose the investigation to the Court or to Mr. Miller. The government stood silent as well.[5]

During the pendency of Mr. Miller's case, Brindley filed no substantive pretrial motions. He filed no written motions in limine, no witness list, and no proposed jury instructions. Brindley apparently did not respond to the government's attempts to confer pretrial. In its Pretrial Memorandum, the government indicated that it filed several written motions in limine "because it was not able to reach counsel regarding pretrial filings." ECF No. 257 at 6.[6]

Mr. Miller's trial commenced on June 11, 2024. ECF No. 398. During trial, Brindley filed a single motion to exclude evidence. Also, during trial, Brindley required Mr. Miller to pay $25,000 in additional attorney's fees in order for Brindley to cross-examine the

[4] Undersigned counsel has been unable to locate any instance in the record where the government alerted Your Honor in Mr. Miller's case of its investigation of Brindley and the resulting conflict of interest.

[5] Ethically and, certainly, it would have been prudent for ASUA Kutcher to inform the Court of the Brindley conflict in all pending cases in which Brindley was defense counsel.

[6] On May 29, 2024, the government filed a second Pretrial Memorandum. Again, attorney Brindley offered no position concerning the government's filing. ECF No. 383.

government's key witness, co-defendant Casteneda. Miller Aff. ¶¶ 6-8.[7] According to Mr. Miller: "Looking back, I now believe my lawyer Beau Brindley needed that additional $25,000 because, unknown to me, he was in trouble with the feds." Miller Aff. ¶ 9.

The jury convicted Mr. Miller on June 20, 2024. ECF No. 408. Miller was taken into custody at the end of the trial. While detained at the MCC after his trial, Mr. Miller first learned that his lawyer Beau Brindley was under DOJ investigation and that investigation began while Brindley represented Miller. *See* Miller Aff. ¶ 9. In his affidavit to support the instant motion, Miller states: "After I got to the MCC-Chicago I learned from another inmate that my attorney Beau Brindley was being investigated. I heard people in the prison talking about Beau was in trouble for stealing money. That was the first time I learned of the federal investigation." *Id.*

## II. RULE 33 STANDARD OF REVIEW

Federal Rule of Criminal Procedure 33(a) states that, on "the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." When considering a Rule 33 motion, the court is not required to view the evidence in the light most favorable to the government. *United States v. Van Eyl*, 468 F.3d 428, 436 (7th Cir. 2006). The court may independently consider witness credibility. *United States v. Sanders*, 690 F. App'x 424 (7th Cir. 2017). The court must grant the motion where the evidence "preponderates heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand." *United States v. Washington*, 184 F.3d 653, 657 (7th Cir. 1999); *see also United States v.*

[7] Kevin Miller, Jr.'s sworn affidavit is attached as Exhibit A.

*Chambers*, 642 F.3d 588, 592 (7th Cir. 2011). A court does not lightly grant a Rule 33 motion. *United States v. Santos*, 20 F.3d 280, 285 (7th Cir. 1994). "[T]he exercise of power conferred by Rule 33 is reserved for only the most 'extreme cases.' " *United States v. Peterson*, 823 F.3d 1113, 1122 (7th Cir. 2016) (quoting *United States v. Linwood*, 142 F.3d 418, 422 (7th Cir. 1998); United States v. Morales, 902 F.2d 604, 606 (7th Cir. 1990)).

The facts of this case are so unique – and trial counsel's conflict of interest is so egregious – that a new trial is warranted.

## III. DISCUSSION

### A. Mr. Miller Had A Constitutional Right to Conflict-Free Counsel During Plea Negotiations and at Trial.

> *"If a criminal defendant's attorney is under investigation by the prosecutors of [his] client, there is a conflict."*
>
> – *Lafuente v. United States*, 617 F.3d 944, 946 (7th Cir. 2010)

It is well-settled law in our circuit that a criminal defendant is denied the effective assistance claim where his lawyer was burdened by a conflict of interest, including where his counsel is "under investigation by the prosecutors of [his] client." *Lafuente v. United States*, 617 F.3d 944, 946 (7th Cir. 2010); *Spreitzer v. Peters*, 114 F.3d 1435, 1450 (7th Cir. 1997) ("The Sixth Amendment right to effective assistance of counsel encompasses 'a correlative right to representation that is free from conflict of interest.' "); *United States v. Barnes*, 909 F.2d 1059, 1065 (7th Cir. 1990) (explaining criminal defendants have a right to counsel with "undivided loyalties"); *see also United States v. Lowry,* 971 F.2d 55, 61 (7th Cir.1992); *Thompkins v. Cohen,* 965 F.2d 330, 332 (7th Cir. 1992). A defense lawyer's client loyalties may diverge when his own

interests conflict with those of the client. *See United States v. Bolzano*, 916 F.2d 1273, 1292 (7th Cir. 1990).

An allegation of the sort presented here is governed by the constitutional rule enunciated in *Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). Under this rule, the defendant must first establish the existence of a conflict of interest. Once the defendant has established such a conflict, he must further establish that the conflict "adversely affected his lawyer's performance." *Id.* at 348, 100 S.Ct. 1708. This showing is not as difficult to meet as the *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), prejudice standard. *See Hall v. United States,* 371 F.3d 969, 973 (7th Cir. 2004) (observing that the *Cuyler* adverse-effect standard is significantly easier to meet than the *Strickland* prejudice standard). In sum, "[a]n 'actual conflict,' for Sixth Amendment purposes, is a conflict of interest that adversely affects counsel's performance." *Mickens v. Taylor*, 535 U.S. 162, 172 n.5, 122 S.Ct. 1237, 152 L.Ed.2d 291 (2002). An "adverse effect" can be demonstrated "by showing that 'but for the attorney's actual conflict of interest, there is a reasonable likelihood that counsel's performance somehow would have been different.'" *Gonzales v. Mize*, 565 F.3d 373, 381 (7th Cir. 2009) (quoting *Stoia v. United States*, 22 F.3d 766, 771 (7th Cir. 1994)).

An actual conflict of interest existed between Defendant Miller and his trial counsel Beau Brindley. Here, the Seventh Circuit's precedent in *Lafuente v. United States*, 617 F.3d 944, 946 (7th Cir. 2010), is particularly instructive. In *Lafuente*, the defendant alleged that he was denied his right to conflict-free counsel because, at the time of his trial, his counsel was subject to prosecution by the same U.S. Attorney's office that was prosecuting him. The district court

denied the defendant's conflict motion without a hearing or other discovery. On appeal, the Seventh Circuit concluded the motion was denied prematurely, vacated the judgment, and remanded for an evidentiary hearing. In so doing, the appellate court stated unequivocally: "If a criminal defendant's attorney is under investigation by the prosecutors of [his] client, there is a conflict." *Lafuente,* 617 F.3d at 946.

Three facts are clear: **(1)** Defendant Miller's trial counsel (Beau Brindley) was under federal investigation during his representation of Mr. Miller; **(2)** Attorney Brindley and AUSA Matthew Kutcher were aware that Brindley was the target of a federal investigation during Brindley's representation of Mr. Miller; **(3)** Attorney Brindley and counsel for the government failed to inform Mr. Miller and, importantly, Your Honor of this actual conflict of interest prior to Miller's trial. Therefore, the Court was unaware that it needed to conduct the required conflict colloquy of Mr. Miller. Based upon these facts and the law of our circuit, Mr. Miller's counsel fell below the constitutional standard.

### 1. Mr. Miller Has Demonstrated That a Conflict of Interest Existed, Entitling him to a New Trial.

An actual conflict of interest results if "'the defense attorney was required to make a choice advancing his own interests to the detriment of his client's interests.'" *United States v. Ziegenhagen*, 890 F.2d 937, 939 (7th Cir.1989) (quoting *United States v. Horton*, 845 F.2d 1414, 1419 (7th Cir.1988)). An "adverse effect" occurs when an attorney's actual conflict of interest causes a " 'lapse in representation contrary to the defendant's interests....' " *Wilson v. Mintzes*, 761 F.2d 275, 286 (6th Cir.1985) (quoting *Sullivan v. Cuyler*, 723 F.2d 1077, 1086 (3d Cir.1983)). Specifically, "[i]t may induce the lawyer to pull his punches in defending his client lest the

prosecutor's office be angered by an acquittal and retaliate against the lawyer." *Id.* Although retaliation by the prosecution would be unethical, "the defense lawyer may fear it, at least to the extent of tempering the zeal of his defense of his client somewhat." *Id.*

Here, the defense agrees with the government's own arguments that it raised in its motion to disqualify Brindley in *Ferguson II.* As the government so aptly argued:

> **The fact that Mr. Brindley is a subject of the investigation creates a conflict of interest and at a minimum requires that defendant Terry Ferguson knowingly waives such a conflict.** *United States v. Horton*, 845 F.2d 1414, 1419 (7th Cir. 1988) (discussing *United States v. Cancilla*, 725 F.2d 867, 870 (2d Cir. 1984)); *United States v. Balzano*, 916 F.2d 1273, 1293 (7th Cir. 1990 ("[W]e have held that an "actual conflict of interest" exists only where there is a danger that the defense attorney would ineffectively represent his client because of fear that authorities might become aware of the attorney's own misconduct if he undertook effective representation.").

*Ferguson II*, 18cr858, ECF No. 74 at 7, n. 3 (emphasis added). Ultimately, Judge Tharp agreed with the government and granted its motion to disqualify Brindley's representation of Ferguson in *Ferguson II*. *See Ferguson II*, at ECF No. 110.

The government cannot have it both ways: It cannot argue that its investigation disqualifies a lawyer in some cases while simultaneously claiming that the very same investigation of the very same lawyer, conducted by the very same AUSA, does not create an actual conflict for clients in other cases.

### 2. Mr. Miller Did Not Waive His Constitutional Right to Conflict Free Counsel.

One could write a treatise solely on the cases addressing attorney Brindley's conflicts

of interest arising from his multiple criminal investigations. For instance, in *United States v. Lewisbey*, 843 F.3d 653, 656–57 (7th Cir. 2016), the government sought a limited remand to address a conflict of interest stemming from a federal criminal investigation targeting attorney Brindley. In *United States v. Masias*, this Court found the fact "[t]hat Brindley was under investigation was well-known prior to the trial in this case." No. 10 CR 1068-1, 2022 WL 474202, at *6–7 (N.D. Ill. Feb. 14, 2022). The *Masias* court found no constitutional error, however, because it had informed the *Masias* defendant of the conflict, explained the risks of proceeding with attorney Brindley, and the defendant "knowingly and intelligently" waived the conflict. *Id.* Thus, this Court held in *Masias* that: "The waived conflict cannot support a finding of ineffective assistance." *Id.* Attorney Brindley's criminal proclivities and the resulting client conflicts were also discussed in *United States v. Galicia*, No. 01 CR 757, 2015 WL 5611572, at *1 (N.D. Ill. Sept. 23, 2015). In *Galicia*, the government filed a motion to disqualify attorney Brindley based on a conflict of interest related to its investigation of him. This Court unequivocally stated:

> "**True enough, Brindley suffered from a conflict while under federal investigation and indictment**. *See Lafuente v. United States*, 617 F.3d 944, 946 (7th Cir. 2010) ("If a criminal defendant's attorney is under investigation by the prosecutors of her client, there is a conflict.")."

*Id.* As in *Masias*, the Court ultimately found no constitutional error occurred because the *Galicia* defendant waived the conflict on the record when "Judge Guzmán specifically and repeatedly advised Galicia during the drug case of the conflict of interest arising from the investigation and indictment of Brindley." *Id.* at *5.

Earlier this year, in *United States v. Ferguson*, the Seventh Circuit remanded a case to this district for the specific purpose of having Judge Kennelly conduct a conflict colloquy regarding attorney Brindley's continued representation of a defendant while Brindley was under investigation. 23-3198 (7th Cir.), docketed Apr. 9, 2024 at ECF No. 10. In *United States v. Ferguson*, the government requested the limited remand, stating: "the government respectfully requests that this Court order a limited remand and direct that the district court conduct a hearing at which any potential conflict can be addressed regarding Mr. Brindley's representation of defendant on appeal." *Id.* The Seventh Circuit agreed a remand was due and required Judge Kennelly to conduct a conflicts colloquy of the defendant on the record. Notably, the conflict that precipitated the remand in *Ferguson* is the same investigation that infected Brindley's representation of Miller in this case. Unquestionably in light of the appellate remand in *Ferguson*, Brindley knew that he had a duty to inform his client Kevin Miller and Your Honor of a potential conflict. Here, however, no such conflicts colloquy or waiver occurred prior to Mr. Miller's trial and conviction. If a conflicts colloquy was required in *Ferguson* then, logically, it follows that a conflicts colloquy and waiver was required prior to Mr. Miller's trial.

To be sure, Brindley's constitutionally defective representation infected his representation of Mr. Miller throughout the case, including plea negotiations, trial preparations, and trial. As the Seventh Circuit has stated: "Criminal defendants are guaranteed effective assistance of counsel, and have the right to representation free from conflict of interest, *at all stages of the proceedings against them*." *United States v. Lafuente*, 426 F.3d 894, 897 (7th

Cir. 2005) (quoting *Hall v. United States,* 371 F.3d 969, 973 (7th Cir.2004) (emphasis added).

### B. Alternatively, the Court Should Grant Mr. Miller an Evidentiary Hearing to Allow Him to Prove His Allegations of Trial Counsel's Conflict of Interest.

At a minimum, Mr. Miller is entitled to discovery and an evidentiary hearing to establish his conflict claim. The Seventh Circuit has held that the district court should grant an evidentiary hearing to a defendant when he alleges that his attorney was under investigation for criminal charges during the representation of his client. *Stoia v. United States*, 22 F.3d 766, 773 (7th Cir. 1994). In *Stoia*, a habeas petitioner alleged in his post-conviction proceedings that his attorney was under investigation for soliciting perjury and obstructing justice at the same time as he was engaged in his representation of *Stoia. Id.* The appellate court reversed and remanded for an evidentiary hearing. *Id.*

The Second and Eleventh Circuits have addressed conflicts when there is a pending investigation and possible criminal charges against an attorney. For instance, the attorney in *United States v. McLain* was under investigation for Hobbs Act violations before and during his client's trial. 823 F.2d 1457 (11th Cir. 1987). The attorney intentionally delayed his client's trial because there was evidence to suggest that the government would not attempt to indict him until his client's trial ended. *Id.* at 1464. The attorney also demonstrated incompetence in representing his client in plea negotiations. *Id.* The eleventh Circuit held: "an actual conflict of interest did exist," the conflict affected the defendant's trial and, what is more, the conflicted lawyer's "competence was most lacking in the area of plea negotiations." *Id.*

The Second Circuit has established that a lawyer who is subject to criminal charges by

a government entity in representing a person whom the same government entity is prosecuting may have a conflict of interest. *United States v. Levy*, 25 F.3d 146, 156 (2d Cir. 1994). The Second Circuit reasoned that the lawyer was afraid to press his client's case too hard out of fear of retaliation by the governmental entity in his own case. *Id.* Levy's attorney, Fisher, was subject to criminal charges that were resolved before Levy's trial began. *Id.* However, the court determined that Fisher was not able to represent Levy properly at the pretrial stage due to his conflict of interest in dealing with the same prosecutor's office. *Id.* The court reversed and remanded the case for a new trial on the grounds that the attorney's conflict of interest violated Levy's Sixth Amendment right to a non-conflicted lawyer. *Id.* at 158-59.

In *Lafuente*, the appellate court remanded for an evidentiary hearing and further development of the record on the defendant's attorney conflict claim. In so doing, the Seventh Circuit concluded that "[t]o warrant further investigation, a petitioner must support a request with more than 'mere unsupported assertions.' " *Lafuente*, 617 F.3d at 946. Mr. Miller has met this threshold burden. First, his affidavit contains key facts that are within Mr. Miller's personal knowledge: Miller indicates in his affidavit that Attorney Brindley began representing Miller no later than May 2017 when Brindley entered an appearance in this case.[8] Miller Aff. ¶ 2. Brindley represented Miller in plea negotiations, court hearings, and at trial. Miller Aff. ¶ 3. This fact, too, is supported by the record. Miller was convicted by jury in June 2024. ECF No. 408. Mr. Miller also swears in his affidavit that, prior to the jury verdict, Brindley never

8 This fact is supported by the record, as Brindley filed his Notice of Appearance on Miller's behalf on May 18, 2017. *See* ECF No. 37.

informed him that he was under investigation. Miller Aff. ¶¶ 4,5. Miller also swears that, in the middle of trial, Brindley required him to pay more money in order for Brindley to cross-examine a key witness. Miller Aff. ¶¶ 6-8. According to Mr. Miller: "Looking back, I now believe my lawyer Beau Brindley needed that additional $25,000 because, unknown to me, he was in trouble with the feds." Miller Aff. ¶ 9. To support his claims, Mr. Miller's affidavit includes screenshots of text messages from Attorney Brindley.

In addition to his sworn affidavit, Mr. Miller also relies on the record and transcript of proceedings in *Ferguson,* which establishes the fact of the investigation and pertinent timeline. In *Ferguson* ATF Agent Labno testified under oath: "We had received permission from Main Justice" to investigate Attorney Beau Brindley.

Perplexingly, at Mr. Miller's October 7, 2024, emergency bond hearing, counsel for the government made a hair-splitting argument that no conflict exists because Mr. Brindley was being investigated by the US. Attorney's office in the Northern District of Indiana, rather than NDIL. As a threshold matter, which district(s) were investigating Brindley is a factual question that must be developed at an evidentiary hearing or, at a minimum, through discovery. The government's bare assertion, standing alone, is insufficient to defeat Mr. Miller's constitutional claim. Furthermore, this argument appears to be factually inaccurate. In its 2019 *Ferguson II* motion to disqualify Brindley, the NDIL U.S. Attorney's Office stated that it was investigating Brindley for a case pending in our district:

> The government continues to investigate the incident, and, as a result of the text messages, Mr. Brindley is a subject of that investigation. The fact that Mr. Brindley is a subject of the investigation creates a conflict of interest and at a minimum requires that defendant Terry Ferguson knowingly waives such a

conflict.

*Ferguson II*, 18cr858, ECF No. 74 at 7, n. 3. Indeed, the government cannot even argue different personnel were involved in these cases because there is a common cast of characters here: attorney Beau Brindley and former AUSA Matthew Kutcher. Common sense dictates that the government cannot use its investigatory powers to disqualify an attorney in one case while, simultaneously, arguing that same investigation poses no conflict of interest in another. And, finally, the U.S. Attorney's offices all fall under the umbrella of the DOJ. As Agent Labno testified in *Ferguson I*, "main justice" of the DOJ approved the investigation of Attorney Brindley. Therefore, our district's US Attorney cannot now claim that it is quarantined from the very investigation and conflict it used to disqualify Brindley in 2019.

## IV. CONCLUSION

Unbeknownst to Mr. Miller, his trial lawyer, Beau Brindley, was under federal investigation for a longer period and more frequently than Miller himself. In fact, a staggering 1,953 days passed between the government's disclosure of its Brindley investigation and the jury's conviction of Miller on June 20, 2024. Throughout that period, Brindley and government counsel appeared before Your Honor on multiple occasions. Neither counsel disclosed the conflict to the Court.

This case presents a clear and egregious conflict of interest. Not only was Miller's lawyer, Beau Brindley, under investigation by the same agency, but the investigation involved the same U.S. Attorney's Office and the same AUSA. Shockingly, just two days after the government moved to disqualify Brindley in *Ferguson II*, that same AUSA appeared before

Your Honor without disclosing the ongoing investigation or the conflict of interest.

Mr. Miller has established a prima facie case of conflict, and he should be allowed to develop the record demonstrating that his counsel's conflicted representation fell below the constitutional standard.

WHEREFORE, the errors discussed above individually and cumulatively resulted in Mr. Miller's conviction and, because his conviction could not have occurred without these errors, fairness and the interests of justice demand that DEFENDANT KEVIN MILLER receive a new trial.[9] For these reasons, we move for a new trial or, alternatively, discovery and an evidentiary hearing to support the arguments set forth in this motion.

Dated this 2nd day of December 2024, at Chicago, Illinois.

Respectfully submitted,

By: ____________________

MIANGEL C. CODY

*Counsel for Kevin Miller*

THE DECARCERATION
COLLECTIVE LAW OFFICE
1325 S. Wabash Suite 305
Chicago, IL 60605

9 Mr. Miller incorporates by reference all pretrial and trial objections that he made during these proceedings, the points of law, and the bases articulated therein. To the extent applicable to him, Mr. Miller incorporates by reference all pretrial and trial objections made by his co-defendant, the points of law, and the bases articulated therein. The arguments preserved by this motion are intended to preserve the more specific objections incorporated within that general objection and are not intended as waiver or forfeiture of any more specific objection. Additionally, defendant Miller preserves his objection to all trial errors. Nothing in this motion is intended to be construed as a waiver or forfeiture of anything else that occurred at trial. Finally, to the extent that co-defendants raise issues that are applicable to Mr. Miller and are not mentioned herein, Mr. Miller hereby moves to adopt those arguments as part of his Motion for a New Trial.

## CERTIFICATE OF SERVICE

The undersigned attorney, MiAngel Cody, hereby certifies that the following document:

**DEFENDANT KEVIN MILLER'S RULE 33 MOTION FOR A NEW TRIAL AND, IN THE ALTERNATIVE, RULE 17(c) MOTION FOR AN EVIDENTIARY HEARING**

was served on December 2, 2024, in accordance with Fed. R. Civ. P. 5 and applicable local rules pertaining to Electronic Case Filing (ECF), pursuant to the district court's ECF system as to ECF filers and was sent by first-class mail or by hand delivery to non-ECF filers, if any.

/s/ MiAngel Cody
MIANGEL CODY

THE DECARCERATION COLLECTIVE
LAW OFFICE
1325 S. Wabash Suite 305
Chicago, IL 60605

*Counsel for Kevin Miller Jr.*

# EXHIBIT A:

# Affidavit of Kevin Miller, Jr., dated December 2, 2024

STATE OF ILLINOIS )
) ss:
COUNTY OF COOK )

# AFFIDAVIT OF KEVIN MILLER, JR.

I, Kevin Miller, Jr., being duly sworn, do state as follows:

1. My name is Kevin Miller, Jr. I am the defendant named in the federal case of *United States v. Kevin Miller, Jr.*, 17cr319 (N.D. IL).

2. Sometime in May of 2017, I hired attorney Beau Brindley to represent me in my federal case. I do not know the exact date that I hired him, but I know it was in or around May 2017. I never received any receipt or paperwork when I paid Brindley to represent me.

3. From 2017 until August 2024, Beau Brindley was my lawyer in pre-trial, plea negotiations, and at my June 2024 federal trial.

4. Prior to my trial, I did not know Beau Brindley was the target of a federal investigation that had occurred while he was representing me.

5. Attorney Beau Brindley never told me that he was under investigation.

6. During my trial on June 11, 2024, I got the following text message from Beau Brindley:



7. I understood this text message to mean that my lawyer Brindley was requiring me to pay him more money in the middle of my trial or he would basically throw the case to the government. I remember Brindley told me he would only cross examine the main witness against me if I paid him an additional $25,000. Brindley told me "its going to work" as long as I brought him more money. I believed that statement to mean that he was promising that I would be found not guilty. My lawyer Brindley also texted me: "Its not a negotiation. Before Casteneda testifies. That's the deal. That's what I said. That's what it is."




8. I believe Beau Brindley was pulling punches in the middle of my trial and holding my legal representation hostage unless I paid him $25,000 more money. He told me that if I did not pay him more money that he would not cross examine the government's witness against me.

9. After my trial and jury conviction, I was taken into custody at the Metropolitan Correctional Center in Chicago (MCC-Chicago). After I got to the MCC-Chicago I learned from another inmate that my attorney Beau Brindley was being investigated. I heard people in the prison talking about Beau was in trouble for stealing money. That was the

first time I learned of the federal investigation. That is why I wrote a motion to the judge in my case about my concerns with my lawyer. Looking back, I believe my lawyer Beau Brindley needed that additional $25,000 because, unknown to me, he was in trouble with the feds.

10. I have reviewed the text communications included here in my affidavit. I swear these are the text messages that I remember Beau Brindley sent to me and my family during the trial.

OFFICIAL SEAL
KELLY ANN RICE
Notary Public, State of Illinois
Commission No. 993873
My Commission Expires July 18, 2028

[signature]
Signed: Kevin Miller, Jr.

Sworn to before me this

2 day of Dec, 2024

[signature] Notary Public