UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>EUGENE ALEXANDER, aka "SRT" | No. 17 CR 319-3<br><br>Hon. John Robert Blakey |

**GOVERNMENT'S CONSOLIDATED**
**RESPONSE TO DEFENDANT ALEXANDER'S POST-TRIAL MOTIONS**

On June 20, 2024, following just over a week of evidence—including testimony from two cooperating defendants, several law enforcement officers, a drug trafficking expert, and two chemists—a jury quickly returned a guilty verdict, convicting defendant Eugene Alexander and co-defendant Kevin Miller, Jr. of possession of narcotics with intent to distribute. Specific to defendant Alexander, the jury found defendant guilty of possessing with the intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of cocaine. Defendant now moves for acquittal, pursuant to Federal Rule of Criminal Procedure 29, and for a new trial, pursuant to Federal Rule of Criminal Procedure 33. The Court should deny defendant's motions because the abundant evidence presented at trial was more than sufficient to convict the defendant.

## I. INTRODUCTION

On June 11, 2024, trial against defendants Eugene Alexander and Kevin Miller, Jr. began with jury selection, and ended on June 20, 2024, with the jury returning a guilty verdict against each defendant. Specifically, the jury convicted

defendant Alexander of possessing with the intent to distribute 500 grams or more of a mixture and substance containing a detectable amount of cocaine, in violation of Title 21, United States Code, Section 841(a)(1).

On August 1, 2024, defendant filed two motions: a motion seeking a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29 (R. 421); and a motion for a new trial on other grounds of claimed error pursuant to Federal Rule of Criminal Procedure 33. R. 420. The government submits a consolidated response to both motions. For the reasons set forth below, defendant's motions are without merit and should be denied.

## II. LEGAL STANDARDS

A motion for judgment of acquittal challenges the sufficiency of the evidence to sustain a guilty verdict against a defendant. Fed. R. Crim. P. 29. A defendant faces "a nearly insurmountable hurdle" in contending that the jury had insufficient evidence to find him guilty. *United States v. Miller*, 782 F.3d 793, 797 (7th Cir. 2015) (internal marks omitted). The court must "afford great deference to jury verdicts, view the evidence in the light most favorable to the jury's verdict, and draw all reasonable inferences in the government's favor." *United States v. Brown,* 973 F.3d 667, 681 (7th Cir. 2020) (citing *United States v. Moreno*, 922 F.3d 787, 793 (7th Cir. 2019)). The jury's verdict may be set aside on the grounds of insufficient evidence "only if no rational trier of fact could have agreed with the jury." *Brown,* 973 F.3d at 681 (citing *Cavazos v. Smith*, 565 U.S. 1, 2 (2011)).

A district court may grant a new trial "if the interest of justice so requires." Fed. R. Crim. P. 33(a). A new trial is in the interest of justice where "the substantial

rights of the defendant have been jeopardized by errors or omissions during trial." *United States v. Kuzniar*, 881 F.2d 466, 470 (7th Cir. 1989). Put differently, a defendant is entitled to a new trial "if there is a reasonable possibility that the trial error had a prejudicial effect on the jury's verdict." *United States v. Maclin*, 915 F.3d 440, 444 (7th Cir. 2019) (quoting *United States v. Flournoy*, 842 F.3d 524, 530 (7th Cir. 2016)). Granting a new trial in the interest of justice is "reserved for only the most extreme cases," and courts approach such motions "with great caution." *United States v. Coscia*, 4 F.4th 454, 465 (7th Cir. 2021) (quoting *United States v. Hagler*, 700 F.3d 1091, 1101 (7th Cir. 2012)). That is because courts are "wary of second-guessing the determinations of both judge and jury." *Id.* (quoting *Hagler*, 700 F.3d at 1101); *see also United States v. Santos*, 20 F.3d 280, 285 (7th Cir. 1994) ("A jury verdict in a criminal case is not to be overturned lightly, and therefore a Rule 33 motion is not to be granted lightly.").

## III. SUFFICIENT EVIDENCE SUPPORTS THE JURY'S FINDING OF GUILT

The jury's verdict was supported by credible and reliable evidence, including: (1) testimony of two cooperating defendants; (2) testimony from several law enforcement officers who participated in the surveillance of defendant and who participated in the stop, search, and seizure of drugs from defendant; (3) photographs of defendant, his vehicle, and the drugs he purchased; (4) testimony from a drug trafficking expert; (5) testimony from a drug chemist; and (6) statements made by defendant when he was stopped by law enforcement. In summary, the evidence was overwhelming.

In his motion for acquittal—and in his motion for a new trial, discussed below—defendant argues that the government failed to prove him guilty beyond a reasonable doubt. Specifically, defendant argues that, while the government proved that the substance in question was, in fact, more than 500 grams of cocaine (and, presumably, that this was a distribution quantity), the government failed to prove that defendant knowingly possessed the cocaine. Rule 29 Mot. at 3; Rule 33 Mot. at 3.[1] At bottom, defendant argues that "inconsistent" and "contradictory" testimony from the witnesses at trial—including cooperating defendants Ricardo Castaneda and Santos Godina, as well as several law enforcement officers—requires dismissal (or a new trial). Defendant is incorrect—the evidence at trial supports the jury's conclusion that defendant knowingly possessed the cocaine in question.

As an initial matter, defendant's argument about alleged "inconsistencies" and "contradictions" is wrong and made without citing to—or even having reviewed—the trial transcript. Setting that aside, in determining a challenge to the sufficiency of the evidence, the court does not reweigh the evidence or second-guess the jury's credibility determinations. *United States v. Carrillo*, 435 F.3d 767, 775 (7th Cir. 2006). In fact, a conviction should be overturned based on a credibility determination only if the witness's testimony was incredible as a matter of law – meaning "impossible under the laws of nature." *United States v. Hayes*, 236 F.3d 891, 896 (7th

[1] Citations to docket are to "R.," followed by the document number. Citations to defendant's Rule 29 motion are to "Rule 29 Mot." followed by the page number. Citations to defendant's Rule 33 motion are to "Rule 33 Mot." followed by the page number, Citations to the trial transcript are to "Tr." followed by the page number. Citations to government's exhibits are to "GX" followed by the exhibit number.

Cir. 2001). Defendant misses the mark, entirely. The jury's assessment of the credibility of the witnesses who testified at trial was reasonable in light of other corroborating evidence, as explained below.

At trial, the government presented overwhelming evidence that defendant did, in fact, possess the cocaine in question before being stopped by law enforcement. First, the government presented testimony from law enforcement officers who surveilled the drug transaction at issue and then pulled over defendant while defendant was in possession of the drugs sold to him by co-defendants Castaneda and Godina. Second, the government introduced photographs of defendant, defendant's vehicle, and the recovered drugs immediately after the arrest. Finally, the government presented testimony from cooperating defendants Castaneda and Godina, each of whom testified at trial about their role in the transaction with defendant.

And while each witness offered a slightly different perspective of the transaction at issue based on their memory and involvement in the transaction, the testimony of each witness was entirely consistent on the material issues: (1) defendant arranged to purchase several kilograms of cocaine from Castaneda; (2) defendant drove his white Land Rover to the prearranged meet location on 23rd Avenue in Melrose Park, where Castaneda and Godina were waiting to complete the transaction; (3) Godina delivered the cocaine, which was placed inside of a red cloth bag, to defendant; (4) defendant was followed by law enforcement following the

transaction and pulled over by the agents shortly after the transaction; and (5) the red cloth bag containing cocaine was retrieved from defendant's car.

Cooperating defendant Castaneda testified at trial that, prior to his arrest, he was a narcotics trafficker who sold wholesale quantities of drugs, including heroin and cocaine, to customers in and around the Chicagoland area, including to defendant on April 11, 2016. Tr. at 525-33, 537-40. Castaneda testified that, prior to the meeting on April 11, defendant messaged Castaneda and informed him that he [defendant] wanted to purchase cocaine from Castaneda. *Id.* at 540. Castaneda agreed to meet with defendant on April 11, 2016, to complete the transaction. *Id.*

Castaneda further testified that on the morning of April 11, 2016, he met with Santos Godina, a courier for Castaneda's drug trafficking organization. *Id.* at 541. In other words, while Castaneda was responsible for providing the drugs to defendant, Godina's role was to carry and physically deliver the drugs to defendant. *Id.* at 541, 553-54. According to Castaneda, the plan was to meet with Godina at a Dunkin Donuts before the transaction. *Id.* at 541. Once Castaneda and Godina met at the Dunkin Donuts, Castaneda drove Godina's car—a silver Honda—to one of the DTO's stash houses to retrieve three kilograms of cocaine and a new burner phone for defendant. *Id.* at 542, 549. Castaneda placed the drugs and burner phone into a red bag and placed the red bag into Godina's car. *Id.* at 543-45. Importantly, Castaneda's testimony about meeting with Godina at Dunkin Donuts, leaving for a period of time, and then returning to Dunkin Donuts was corroborated by surveillance footage that was shown to the jury and admitted as Government Exhibit

201. At trial, Castaneda also identified GX 102 as being the same bag he used to carry the drugs and phone to deliver to defendant. Tr. at 543-44.

Before discussing the transaction itself, it is worth pausing here to address a point made in defendant's Rule 29 and Rule 33 motions. Defendant argues that Castaneda's testimony at trial that he provided defendant with 3 kilograms of cocaine is inconsistent with Castaneda's prior interviews and testimony that Castaneda provided defendant with "between 2 and 3 kilo[grams]" of cocaine. Rule 29 Mot. at 3; Rule 33 Mot. at 3. This argument is unavailing. First, the testimony is consistent on its face: three kilograms is between two and three kilograms. Second, even if there was some confusion about whether two or three kilograms of cocaine was distributed, the evidence at trial explained this alleged discrepancy. As the Court may recall, although three kilograms of cocaine were ultimately distributed to defendant, the drugs were wrapped in two (rather than three) separate packages, one bigger than the other. Tr. at 871-73; *see also* GX 304. Rather than being inconsistent, Castaneda's testimony was consistent with his prior statements and corroborated by the other evidence presented at trial.

After returning to the Dunkin Donuts, Castaneda and Godina drove to the agreed-upon meeting location at 23rd Avenue and Lake Street in Melrose Park. Tr. at 549-50. Castaneda testified that he parked on the west side of 23rd Avenue, just south of Lake Street. *Id.* at 550. Godina parked on the opposite side of the street. *Id.* at 551. While Castaneda and Godina were parked on 23rd Avenue, Castaneda observed a white Land Rover drive onto the block. *Id.* at 552. At the same time that

the white Land Rover pulled onto the block, Castaneda received a text message from defendant informing Castaneda that defendant had arrived. *Id.* at 553. Castaneda then observed Godina exit his car holding a red bag—the same red bag that Castaneda placed in Godina's car—and walk toward the white Land Rover. *Id.* at 553-54. According to Castaneda, Godina walked away from the white Land Rover with a different bag, carrying $80,000 in cash, payment for the three kilograms of cocaine that Castaneda had just sold to defendant. *Id.* at 554-55.

Finally, Castaneda testified that, after the transaction was completed, he observed defendant drive south on 23rd Avenue, away from the where the transaction occurred. *Id.* at 555. According to Castaneda, another vehicle—a gray Dodge Journey—pulled and drove behind defendant as he left the scene. *Id.* at 556. Castaneda did not recognize the vehicle and sent a message to defendant asking if the gray Journey was with defendant, to which defendant responded no. *Id.* Castaneda testified that, a short time later, defendant called and informed Castaneda that defendant was pulled over and that defendant's picture was taken. *Id.* at 556-57.

In addition to Castaneda, Godina testified at trial and largely corroborated the testimony offered by Castaneda. For example, Godina confirmed that his role within the drug trafficking organization was a courier—dropping off drugs and picking up money. *Id.* at 950. Godina also testified about the transaction with defendant on April 11, 2016. To start, Godina testified that he had known defendant since about 2010 and knew him by the nickname "SRT." *Id.* at 959. Godina explained that he

knew defendant as SRT because of the Jeep SRTs that defendant frequently drove. *Id.* at 959-60. Godina testified that, on the morning of April 11, 2016, he met with Castaneda at a Dunkin Donuts prior to the transaction with defendant. *Id.* at 961. Godina explained that after arriving at the Dunkin Donuts, Castaneda took Godina's car to a nearby garage to pick up drugs. *Id.* at 963. According to Godina, the plan was for Castaneda to retrieve the drugs, but for Godina to physically deliver them to defendant. *Id.*

After Castaneda retrieved the drugs and returned to the Dunkin Donuts, Godina and Castaneda relocated to 23rd and Lake in Melrose Park to complete the transaction. *Id.* at 965. Godina testified that he parked on the east side of 23rd Avenue and that Castaneda followed him to that general area. *Id.* at 969. About five minutes after parking on 23rd, Godina observed defendant arrive and park his car—which Godina recalled "[c]ould have been a Jeep"—park about two car lengths in front of him. *Id.* at 969-70.

Godina then testified that he got out of his car and carried a red bag containing drugs to defendant's car. *Id.* at 970. At trial, Godina identified the red bag he carried to defendant as Government Exhibit 102—the same bag that was recovered from defendant's car after he was stopped by law enforcement. *Id.* at 971; *see also* Tr. at 441-42 (Special Agent Tyler Kazee identifying GX 102 as the red bag he retrieved from defendant's Land Rover). Godina then testified that he handed the red bag to defendant through the driver's side window, and, in exchange, defendant handed Godina a bag full of cash. *Id.* at 972-75.

Defendant's objections to Godina's testimony are frivolous. First, defendant argues that Godina's testimony was inconsistent with Castaneda's because Godina "didn't even see Castaneda" parked on 23rd Avenue. Rule 29 Mot. at 4. First, that is not material to whether defendant possessed the cocaine at issue. Second, it is not true. While Godina testified that he "didn't see *where* [Castaneda] parked," Godina testified that Castaneda did, in fact, park on 23rd. Tr. at 969 (emphasis added). Additionally, Godina surmising that defendant may have been driving a Jeep (rather than a Land Rover) is of no moment. Godina was unequivocal that he handed the red bag containing drugs directly to defendant, an individual Godina had known for at least six years at that point.

The remainder of defendant's Rule 29 motion focuses on alleged discrepancies and inconsistencies in the testimony offered by several law enforcement officers who participated in the surveillance and stop of defendant on April 11, 2016. Rule 29 Mot. at 4-6. Specifically, defendant argues that Commander Frank Teutonico, Special Agent Tyler Kazee, Special Agent Michael Ford, and Deputy Chief James McGreal contradicted one another on certain aspects of the stop and seizure of defendant, including where each officer was positioned (*id.* at 4), what, specifically, was communicated among the officers during the stop (*id.* at 5), and whether a field test of the cocaine was performed (*id.* at 6). Defendant's arguments regarding these alleged inconsistences are reproduced, nearly word-for-word, in defendant's motion for a new trial pursuant to Rule 33, which will be addressed below.[2] *See*, Rule 33

[2] The government will address the law enforcement officers' alleged discrepancies and inconsistences in more detail in response to defendant's Rule 33 motion for two reasons: (1)

Mot. at 3-7. As an initial matter, defendant's argument is not at all supported by the record. But even if it were, his argument still falls flat.

The "deferential standard of review" under Rule 29 "is difficult for any defendant to overcome," but when a defendant's sufficiency challenge "primarily attacks a credibility determination, his task is even more difficult." *United States v. Alcantar*, 83 F.3d 185, 189 (7th Cir. 1996). That is "because questions of credibility are solely for the trier of fact." *United States v. Curry*, 79 F.3d 1489, 1497 (7th Cir. 1996). "[S]ufficiency arguments based upon witness credibility are all but frivolous." *United States v. Chester*, 2017 WL 3394746, *14 (N.D. Ill. 2017). Defendant had the opportunity to fully cross-examine the law enforcement officers—as well as Castaneda and Godina—and to highlight the alleged discrepancies and argue the witnesses' lack of credibility. And defendant did exactly that, both on cross examination and during closing argument:

> But these are all excuses and not proof beyond a reasonable doubt. You cannot ignore the lies that you heard, the changes in testimonies by Godina, Castaneda, and all the agents, the inconsistencies, and the lack of evidence.
>
> ***
>
> It is important. Now, there's another instruction on witnesses and how to assess their believability. You have heard evidence that before trial, witnesses made statements that may be inconsistent with their testimony. You heard a ton of that. But you didn't only hear that. You also heard testimony that was made under oath during the grand jury testimonies of Godina, Castaneda, and Agent Gildein. That type of testimony you can actually consider as evidence in this case.

---

the standard for a Rule 33 motion is more favorable to defendant and, even under that more relaxed standard, defendant's argument is meritless; and (2) in his Rule 33 motion, defendant argues that Commander Teutonico's testimony was not only contradicted or inconsistent, but false. Defendant's misguided argument warrants special attention.

***

> So Ford tells you that he came alongside the Land Rover by 11th and Washington, and when the Land Rover was -- when he was about to stop him, the Land Rover turned left right in front of him; and only then he turned on his lights. And he clearly told you that he saw Teutonico behind him.
>
> So, who's where? It's important. You cannot brush it under the rug. You cannot ignore these inconsistencies because the jury instruction, the judge tells you you cannot.
>
> The stop. Teutonico tells you he's on the scene for five minutes, had his own handcuffs. He remembered he had his own handcuffs. He walked up to the car, opened the driver's side door, pulled Eugene out, and cuffed him. Ford tells you, "Oh, no, no. Teutonico didn't have the handcuffs. I gave Teutonico my handcuffs, and that's how Eugene got cuffed."

Tr. at 1310-11, 1340.

Plainly, the jury rejected the totality of defendant's argument and accepted at least some of the testimony offered by law enforcement as well as the testimony offered by Castaneda and Godina. And "it is not the province of the court to second guess [the jury's] credibility assessments." *United States v. Lane*, 2024 WL 3984262, at *4 (N.D. Ill. Aug. 28, 2024). "Only in the narrowest of circumstances," the Seventh Circuit has said, "will the defendant succeed . . . in establishing that testimony credited by a jury was incredible as a matter of law." *Alcantar*, 83 F.3d at 189. This may be done in one of two ways: "by showing that it would have been physically impossible for the witness to observe what he described, or impossible under the laws of nature of those events to have occurred at all." *Id.* Defendant makes no such showing but rather asserts that discrepancies and inconsistencies required the jury to reject the testimony of the law enforcement officers. But that is not enough. First,

there were no discrepancies or inconsistencies that would warrant a dismissal. But even if there were, "[d]iscrepancies arising from impeachment, inconsistent prior statements, or the existence of a motive do not render witness testimony legally incredible." *United States v. McEntire*, 153 F.3d 424, 435 (7th Cir. 1998).

Additionally, the jury did not consider the testimony of Castaneda, Godina, and the law enforcement officers in a vacuum. Instead, their testimony was corroborated by physical, photographic, and video evidence presented to the jury. In addition to the Dunkin Donuts surveillance footage described above, the government presented evidence of the photo that was taken of defendant by law enforcement after he was stopped—the same photograph referenced by defendant in his call with Castaneda, described above. *See* GX 302; Tr. at 556-57. Additionally, the government presented to the jury a photograph of defendant's white Land Rover, which, again, was taken after defendant was stopped. *See* GX 301; *see also* Tr. at 301. The jury also saw photographs of the red bag that Castaneda used to package the three kilograms of cocaine and a burner phone, and that Godina handed to defendant. GX 303; Tr. at 304-05. In short, the testimony of the two individuals responsible for procuring and delivering the narcotics to defendant, and the testimony of the officers who observed the transaction, was corroborated by physical and photographic evidence.

## IV. DEFENDANTS' MOTION FOR A NEW TRIAL LACKS MERIT.

### A. Legal Standards for New Trial

A court may vacate a judgment and grant a new trial upon a defendant's motion "if the interest of justice so requires." Fed. R. Crim. P. 33; *see also United*

*States v. Berg*, 714 F.3d 490, 500 (7th Cir. 2013); *United States v. Smith*, 674 F.3d 722, 728 (7th Cir. 2012). A new trial is in the interest of justice where "the substantial rights of the defendant have been jeopardized by errors or omissions during trial." *Kuzniar*, 881 F.2d at 470.

"[A] defendant is entitled to a new trial if there is a reasonable possibility that a trial error had a prejudicial effect upon the jury's verdict." *United States v. Van Eyl*, 468 F.3d 428, 436 (7th Cir. 2006). Rule 33 motions are generally disfavored and courts should grant them only in "the most extreme cases." *United States v. Linwood*, 142 F.3d 418, 422 (7th Cir. 1998) (internal marks omitted); *see also Santos*, 20 F.3d at 285 (7th Cir. 1994) (internal marks omitted) ("A jury verdict in a criminal case is not to be overturned lightly, and therefore a Rule 33 motion is not to be granted lightly."). Although the Court has broad discretion in ruling on a motion under Rule 33, the Seventh Circuit has cautioned:

> The court may not reweigh the evidence and set aside the verdict simply because it feels some other result would be more reasonable. . . . The evidence must preponderate heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand. . . . Motions for new trial based on weight of the evidence are not favored. Courts are to grant them sparingly and with caution, doing so only in those really exceptional cases.

*United States v. Reed*, 875 F.2d 107, 113 (7th Cir. 1989) (internal marks omitted).

For the reasons stated below, defendant's Rule 33 motion fails to meet this high burden and should be denied.

### B. Defendants' Conclusory and Barebones Allegations of Error Do Not Suffice.

Defendant's motion for a new trial seeks to "incorporate[ ] by reference all objections made during the trial as though full recited herein." Rule 33 Mot. at 1 n.1.[3] Additionally, defendant's motion seeks to "incorporate[ ] all pre-trial and trial motions denied by this Court." *Id.* Here, defendant has failed to articulate any basis under which "the interest of justice" would require a new trial. Even if he has not waived the issue by failing to develop the arguments, his perfunctory claims fall well short of meeting the high standard of Rule 33. He thus has failed to show that this is one of the "most extreme cases" where a new trial is warranted, and his Rule 33 motion should be denied. Simply referencing the Court's earlier decisions is not enough. The Seventh Circuit has repeatedly clarified that underdeveloped and merely perfunctory arguments like this are waived. *See United States v. Hassebrock*, 663 F.3d 906, 914 (7th Cir. 2011) (finding the argument was "decidedly underdeveloped and therefore waived"); *United States v. Foster*, 652 F.3d 776, 793 (7th Cir. 2011) ("As we have said numerous times, underdeveloped arguments are deemed waived[.]") (internal quotation marks omitted); *see also Willis v. Lepine*, 687 F.3d 826, 836 (7th Cir. 2012) ("Merely reciting the Rule 59(a) standard and then tossing the motion into the court's lap is not enough. Failure to adequately present an issue to the district court waives the issue on appeal."). Defendant's motion should

[3] As noted above, the motion also acknowledges that defendant's arguments and recitation of facts is based, not on the trial transcripts, but on his own recollections. *Id.*

be denied as to any objections and rulings by this Court that are not specifically articulated.

Additionally, and as explained below, defendant's other Rule 33 arguments fail on the merits and should be denied.

### C. Defendant's Rule 33 Motion Fails on the Merits.

#### 1. The Government Proved Defendant Guilty Beyond a Reasonable Doubt.

In his motion for a new trial, defendant repeats, verbatim, the arguments set forth in his Rule 29 motion challenging the sufficiency of the evidence supporting the jury's verdict. A new trial is warranted "where the evidence preponderates so heavily against the defendant that it would be a manifest injustice to let the guilty verdict stand." *United States v. Reed*, 875 F.2d 107, 114 (7th Cir. 1989). Noting that, unlike Rule 29, Rule 33 does not require a trial court to defer to a jury's credibility findings, defendant argues that this Court should therefore reject the testimony of the cooperating defendants and law enforcement officers as to the drug transaction at issue. Rule 33 Mot. at 2.

In deciding a Rule 33 motion for a new trial, there is no need "to engage in a second end-to-end review of the same evidence . . . used in determining sufficiency under the motion to acquit." *United States v. Conley*, 875 F.3d 391, 400 (7th Cir. 2017). It is true that a district court can consider witness credibility in evaluating a motion for a new trial, *id.* at 399, but "that discretion does not grant trial courts unbridled license to substitute their credibility assessments for those of the jury." *Lane*, 2024 WL 3984262, at *13. "Overturning the jury's determination on the

credibility of the testimony of [Castaneda, Godina, and the law enforcement officers] would require the court to make the exacting and rare determination that [their] testimony was incredible as a matter of law." *Id.* at 400 (citing *United States v. Hayes*, 236 F.3d 891, 896 (7th Cir. 2001)). "Such a determination is usually reserved for extreme situations wherein, for example, 'it would have been physically impossible for the witness to observe what he described, or it was impossible under the laws of nature for those events to have occurred at all.'" *Id*; *see also Kuzniar*, 881 F.2d at 471 (in adjudicating a Rule 33 motion for a new trial, a district court may take testimony away from the jury only "where the testimony contradicts indisputable physical facts or laws"). "A finder of fact is entitled to believe the testimony of even the most dishonest of witnesses." *United States v. Algee*, 309 F.3d 1011, 1016 (7th Cir. 2002).

As argued above in response to defendant's Rule 29 motion, the jury's verdict was not manifestly unjust. Although the government fully debunked defendant's arguments with respect to the testimony of cooperating defendants Castaneda and Godina, it is worth pausing here to address the alleged inconsistencies in the testimony of the law enforcement officers who surveilled and ultimately stopped defendant. First, defendant takes issue with Commander Teutonico's testimony that, although Teutonico stopped defendant and pulled him from his vehicle, Commander Teutonico did not see the red bag and never saw anyone recover the red bag. Rule 33 Mot. at 4. So what? Each of the officers involved in the surveillance, pursuit, and stop of defendant played a different role.

Commander Teutonico pursued defendant's white Land Rover after the transaction with Godina was completed and attempted to stop defendant's vehicle. Tr. at 289-300. After defendant's vehicle finally came to a stop after a high-speed chase, Commander Teutonico "ran up to the driver's side door, opened the driver's side door and placed the defendant on the ground." *Id.* at 300. Commander Teutonico also took a photograph of the Land Rover and of defendant. *Id.* at 300-02; *see also* GX 301, 302. That Commander Teutonico did not see the red bag as he rushed to pull defendant from the Land Rover after defendant tried to evade law enforcement is logical. Put another way, it was not "impossible under the laws of nature." *Kuzniar*, 881 F.2d at 471.

Moreover, defendant's argument that Special Agent Kazee's testimony that he did not "search" the Land Rover was contradicted Special Agent Ford's testimony is a stretch, at best. At trial, Special Agent Ford testified that, after Commander Teutonico pulled defendant from the car and placed him in handcuffs, Special Agent Ford observed Special Agent Kazee "searching the car." Tr. at 402. Special Agent Kazee, on the other hand, testified that he did not "conduct a search of the vehicle." *Id.* at 448. However, defendant ignores the testimony that immediately proceeded this quote. Special Agent Kazee testified that, at the time of the stop, his "focus was . . . on the vehicle" and that when he approached the driver's side of the Land Rover, he saw a red cloth bag. *Id.* at 440, 448. After seeing the bag, Special Agent Kazee "went through the front driver's seat and just reached over like the center console and grabbed the bag." *Id.* at 440. Although Special Agent Kazee did not conduct a

full search of the vehicle, Special Agent Ford's testimony that he saw Special Agent Kazee "search the car" is explained by the fact that Special Agent Kazee did, in fact, *reach into the car* to retrieve the red cloth bag containing drugs.

Defendant's allegations of inconsistencies and contradictions are, charitably to defendant, the result of faded memories and different vantage points, which is both understandable and unremarkable given that the conduct occurred in 2016, and the trial commenced more than eight years later. *See*, *Lane*, 2024 WL 3984262 at *14 ("It is unremarkable that over the course of the eight years between Hoard's murder and Lane's trial, these and other witnesses would recount events differently in some respects, and neither such discrepancies nor the fact that they had attractive plea deals renders their testimony implicating Lane in the Hoard/Palmer shootings incredible as a matter of law."). Like the defendant in *Lane*, defendant here "had a full opportunity to present evidence and argument about the unreliability" of the witnesses who testified at trial. *Id.* Indeed, as recounted above, defendant did exactly that. The jury flatly rejected defendant's argument, and the Court should do so, here.

### 2. The Court Did Not Err in Denying Defendant's Motion to Suppress.

Before trial, defendant filed a motion to suppress all evidence derived from the stop of his vehicle on April 11, 2016, including narcotics and a cell phone. R. 192. Defendant claimed that the stop violated the Fourth Amendment, and thus, the Court should suppress all evidence derived therefrom. *Id.* On November 19, 2020, this Court denied defendant's motion. R. 320. Defendant now argues that the Court erred

in denying the motion to suppress. Rule 33 Mot. at 7. This Court should reject defendant's argument for the same reasons outlined in its November 19, 2020, ruling.

In renewing his motion to suppress, defendant's interpretation of the Court's ruling is narrow and misleading. First, defendant suggests that the Court's ruling was based almost entirely on the testimony offered by Special Agent Sellers. *See* Rule 33 Mot. at 8-13. But the Court's ruling was based not only on the observations made by Special Agent Sellers, but also on the observations and testimony provided by Special Agent Kazee, Special Agent Ford, and Special Agent Gildein. R. 320 at 1-2; R. 240. Specifically, the Court based its decision on a constellation of facts that were established during the hearing: (1) on April 11, 2016, law enforcement officers observed Castaneda, a known DTO leader, park his car on a residential street; (2) law enforcement officers observed Godina, a known courier for the DTO, also arrive on the scene; (3) Special Agent Sellers observed Godina exit his car and hand a red cloth bag to defendant, who was seated in a white Land Rover; (4) law enforcement officers observed the white Land Rover drive away from the scene; (5) the driver of the white Land Rover fled when officers attempted to pull him over. R. 320 at 22-23. None of those facts were controverted at trial.

According to defendant, Commander Teutonico's testimony "compels this court to reassess the credibility, factual, and legal findings it made when it denied" defendant's motion. Rule 33 Mot. at 8. This is not true. At bottom, defendant's argument is that Commander Teutonico's testimony contradicts with Special Agent Sellers' testimony because, if both are to be believed, they were parked on the same

side of the street. The government fails to see the issue. As defendant readily concedes, Commander Teutonico did *not* observe Godina hand the red cloth bag to defendant. Instead, he observed Godina approach defendant with a red cloth bag, and then he observed Godina return to his own car carrying a plastic grocery bag. Tr. at 287-88. This, in no way, contradicts the suppression hearing testimony from Special Agent Sellers, who observed the same interaction. The testimony is consistent with one another in all material respects. That there may be small inconsistencies or discrepancies is, again, unremarkable. *Lane*, 2024 WL 3984262 at *14.

Finally, even if the testimony of Commander Teutonico contradicted the testimony of Special Agent Sellers, such that Special Agent Sellers' testimony is incredible, the outcome remains the same. In denying the motion to suppress, this Court found that an alternate justification to stop defendant's car existed because the officers possessed a sufficient basis to believe that a traffic violation had occurred. R. 320 at 18 n. 7. Specifically, the Court found, as a factual matter, that defendant "committed multiple traffic violations when he drove his vehicle in a reckless manner, including at the moment when he made a left turn that cutoff the agents' car and crossed through the intersection at the outset of his high speed flight in a residential area." *Id.* Accordingly, law enforcement had an alternate legal justification for its actions.

### 3. The Government Did Not Offer False Testimony.

In a desperate attempt to undo the jury's decisive and well supported verdict, defendant accuses the government of suborning perjury, an outrageous and false

accusation. Specifically, defendant baselessly argues that the government elicited false testimony—while *knowing* it was false—during trial from Commander Teutonico. Rule 33 Mot. at 13 ("[I]t is clear the government knew of these agent's testimony was false. 'When the government learns that part of its case may be inaccurate, it must investigate.'"). This is a serious accusation made by defendant that is completely unsupported by the record.

As numerous courts have acknowledged, "[a]lthough claims [of subornation of perjury] are easy to make, due to their serious nature, there must be more than mere conjecture to rise to the level of such a showing." *United States v. Westmoreland*, 2010 WL 5141770, at *5 (S.D. Ill. Dec. 13, 2010); *see also United States v. Mahalick*, 498 F.3d 475, 480 (7th Cir. 2007), *abrogated on other grounds* (perjury accusation "too lightly made by defense counsel" where defendant contended that two witnesses who remembered an interview somewhat differently a year and a half after it took place was evidence of government interference). And as the Seventh Circuit has stressed: "Flippant, unfounded accusations of misconduct and fraud by opposing counsel and court officials demean the profession and impair the orderly operation of the judicial system." *Matter of Lisse*, 921 F.3d 629, 644 (7th Cir. 2019) (citing *Matter of Palmisano*, 70 F.3d 483, 487 (7th Cir. 1995)). Defendant's unsupported claims of serious attorney misconduct should not be countenanced.

As noted above, the record does not, at all, support defendant's argument that the testimony offered by Commander Teutonico contradicts the testimony of Special Agent Sellers. As an initial matter, it bears noting that Special Agent Sellers did not

testify at trial. This is a point that defendant repeatedly makes throughout his Rule 29 and Rule 33 motions, almost to suggest something nefarious. Rule 33 Mot. at 9 ("At trial, despite meeting with him in preparation for trial, the government did not call Sellers to testify."). As the government noted in its motion *in limine*, the reasons for not calling witnesses are many and complex, from "concern about the witness's appearance and demeanor to concern about the content of the testimony." *United States v. Sblendorio*, 830 F.2d 1382, 1394 (7th Cir. 1987). Of course, if defendant's theory of the case hinged on drawing a distinction between the testimony of Special Agent Sellers and Commander Teutonico, they were free to call Special Agent Sellers. Of course, there was no meaningful distinction between their testimony such that Commander Teutonico's testimony should be disregarded.

Even if the Court were to credit defendant's argument that discrepancies existed and, assumed, for the sake of argument, that either Commander Teutonico or Special Agent Sellers was mistaken about which side of the street they were parked on when conducting surveillance (the only conflicting testimony identified by defendant), then defendant's argument still fails. Indeed, in that scenario, Commander Teutonico's recollection of the events in question might differ from the recollection of Special Agent Sellers. But that, of course, is not a basis to conclude that either one of them is *lying*. *See, United States v. Jackson*, 741 F.3d 861 (7th Cir. 2014) (Suborning perjury is "a serious accusation, and one too lightly made by defense counsel in this case. [Defendant] has no evidence whatsoever of prosecutorial misconduct or perjury, and simply contends that since Jackson and Conway

remembered the interview somewhat differently a year and a half after it took place, the government must have interfered. But it takes more than two witnesses' differing recollections to sustain a perjury charge.").

Defendant purchased narcotics from Castaneda and Godina in April 2016. Special Agent Sellers testified at a suppression hearing about his observations regarding the transaction three years later in 2019. R. 240. Commander Teutonico testified about his observations and involvement in the transaction *five* years after that, in June 2024. Differences in the recollection of certain details—to the extent they event exist—is not only understandable, it is all but inevitable given the sizable gap between when the conduct occurred and the date of the trial.

Defendant makes several other claims that are similarly confounding and disproven by the record. For example, defendant argues that he "did not have an adequate opportunity to expose the falsity of [Teutonico and Sellers'] testimony. The discovery tendered to Mr. Alexander did not indicate that Teutonico was present in the same vehicle as Sellers, let alone reveal Teutonico's admissions that he could not see what Godina did with the red bag after exiting the Honda." Rule 33 Mot. at 14. Defendant is mistaken. First, at no point did Commander Teutonico testify that he was in the same car as Special Agent Sellers. In fact, the *opposite* is true. Tr. at 283 ("Q: Okay. Was anyone else in the car with you? A: No. I was alone."). Second, the government *did* make a witness disclosure on June 3, 2024, approximately one week before trial, laying out what Teutonico observed with respect to Godina and the red bag. Ex. A (6/3/2024 Email). In the disclosure, the government noted the following:

> First, the government met with FBI TFO Frank Teutonico today to prepare for trial. The information from Officer Teutonico largely reflected the information contained in DEA 6 reports previously tendered in discovery and in preparation for trial. Officer Teutonico advised that he was one of the officers tasked with conducting surveillance on Castaneda/Godina on April 11, 2016. Officer Teutonico does not recall going to the Dunkin Donuts where other surveillance officers spotted Castaneda but does recall going to the area of 23rd Avenue in Melrose Park, where he saw Godina exit his vehicle (light-colored Honda) while carrying a red bag that appeared to be weighed down by a heavy object inside. *Officer Teutonico saw Godina walk in the direction of a white Land Rover while holding the red bag but did not see Godina place or hand the red bag to the driver of the Land Rover.*

*Id.* (emphasis added).

Commander Teutonico's testimony at trial was consistent with the summary above, was accurate, and—importantly—was accepted by the jury. The Court should reject defendant's frivolous argument and deny his motion for a new trial.

**4. The Court Did Not Err in Denying Defendant's Motion to Sever.**

Finally, defendant argues that the Court erred in denying his motion to sever his trial from the trial of co-defendant Kevin Miller, Jr. Rule 33 Mot. at 15. However, defendant failed to demonstrate how he was actually prejudiced by having been tried along with co-defendant Miller.

Federal Rule of Criminal Procedure 8 governs joinder of defendants and offenses. Subsection (a) allows for the joinder of offenses in the same indictment if the offenses "are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." Fed. R. Crim. P. 8(a). Subsection (b) allows for the joinder of defendants in the same indictment "if they are alleged to have participated in the same act or transaction, or

in the same series of acts or transactions, constituting an offense or offenses." Fed. R. Crim. P. 8(b). Here, defendant does not contend that joinder was improper under Fed. R. Crim. P. 8. Instead, he argues that he was prejudiced under Fed. R. Crim. P. 14. Rule 14 provides that if joinder "appears to prejudice a defendant," a court may order separate trials. Fed. R. Crim. P. 14(a). Rule 14 requires actual prejudice to a defendant to warrant severance: "such prejudice requires that the defendant have been deprived of a fair trial, not merely a better chance at acquittal than an individual trial may have afforded." *United States v. Morales*, 655 F.3d 608, 624 (7th Cir. 2011) (citations omitted); *cf. United States v. Lane*, 474 U.S. 438, 439 (holding that actual prejudice means a "substantial and injurious effect or influence in determining the jury's verdict").

The Seventh Circuit has "outlined four circumstances in which actual prejudice might lead to a severance: (1) conflicting and irreconcilable defenses; (2) a massive and complex amount of evidence that makes it almost impossible for the jury to separate evidence as to each defendant; (3) a codefendant's statement that incriminates the defendant; and (4) a gross disparity of evidence between the defendants." *United States v. Clark*, 989 F.2d 1490, 1499 (7th Cir. 1993) (citing *United States v. Oglesby*, 764 F.2d 1273, 1276 (7th Cir. 1985)). As with his pretrial motion, defendant's Rule 33 motion focuses solely on the fourth factor.

Defendant argues—without citing to any authority or actual evidence—that there was a "gross disparity" in the evidence presented against co-defendant Miller as compared to the evidence presented against defendant. That is simply untrue. As

outlined above, the evidence presented against defendant was abundant. Both cooperating defendants testified that they sold and delivered the drugs to defendant. A law enforcement officer testified that he witnessed Godina deliver the red bag full of cocaine to defendant's car. And unlike Miller, defendant was actually caught with the drugs sold to him by Castaneda and delivered by Godina. Put another way, he was caught red-handed with the red bag. And on top of that, defendant, his car, and the drugs were photographed immediately after the stop and displayed to the jury. The evidence was overwhelming.

Finally, the Court correctly found that this was not "so complicated that a jury would have any difficulty considering the evidence or following jury instructions to consider the evidence as to each Defendant and each count separately, which undermines any claim of a risk of actual prejudice." R. 391 at 5. (citing *United States v. Lanas*, 324 F.3d 894, 900 (7th Cir. 2003) (affirming district court's denial of severance where the court provided limiting instruction to the jury)). Indeed, the jury was instructed to consider the evidence against each defendant separately. R. 407 at 21, 24, 25. There is a rebuttable presumption that juries follow the instructions given by the court. *United States v. Flournoy*, 842 F.3d 524, 528 (7th Cir. 2016). Here, defendant has not done anything to persuade the Court that the jury ignored the Court's instruction to consider the defendants separately. Accordingly, for these reasons and for the reasons stated in its pretrial ruling, the Court should deny defendant's motion.

### D. Defendant's Cumulative Errors Argument Lacks Merit.

Defendant argues that all of the errors identified in his motion for a new trial, when considered cumulatively, create a basis to order a new trial.

"Cumulative errors, while individually harmless, when taken together can prejudice a defendant as much as a single reversible error and violate a defendant's right to due process of law." *United States v. Allen*, 269 F.3d 842, 847 (7th Cir. 2001). To demonstrate cumulative error, defendant must show that (1) at least two errors were committed during the trial, and (2) these errors so infected the jury's deliberation that they denied him a fundamentally fair trial. *United States v. Avila*, 557 F.3d 809, 821-22 (7th Cir. 2009) (quotation omitted). Courts use "care not to magnify the importance of errors that had little significance in the trial setting," and instead will grant a new trial "only if the effect of the errors, considered together, could not have been harmless or that but for the errors, the outcome of the trial probably would have been different." *Id.*

As set forth above, defendant has failed to identify *any* material deficiencies in the evidence or any error by the Court. Adding these claims together does not change the outcome. There is no basis to order either defendant a new trial.

## V. CONCLUSION

For the foregoing reasons, defendant's consolidated post-trial motions should be denied.

Dated: January 24, 2025

Respectfully submitted,

MORRIS PASQUAL
Acting United States Attorney

By: /s/ *Jimmy L. Arce*
JIMMY L. ARCE
MEGAN E. DONOHUE
Assistant U.S. Attorneys
219 South Dearborn St., Rm. 500
Chicago, Illinois 60604
(312) 353-8449