IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>KEVIN MILLER, JR., et al. | No. 17 CR 319<br><br>Judge John Robert Blakey |

# DEFENDANT KEVIN MILLER'S EVIDENTIARY PROFFER IN SUPPORT OF HIS RULE 33 MOTION FOR A NEW TRIAL

There are three facts beyond the point of legitimate debate in this case. ***First,*** by the government's own submission, it concedes that attorney Beau Brindley was under DOJ investigation while representing DEFENDANT KEVIN MILLER; its response brief attaches a letter admitting as much. ECF No. 484. ***Second,*** the government cannot deny that Mr. Brindley knew of an investigation no later than December 2019, when the NDIL U.S. Attorney's Office disclosed it to him. ***Third,*** only after Your Honor ordered a response to Mr. Miller's Motion for a New Trial in February 2025 did the government finally inform Mr. Brindley that the investigation had been closed. By then, Mr. Brindley had withdrawn as Mr. Miller's counsel and the damage was done. For years, the fog of Mr. Brindley's federal investigation(s) hung over this case, shaping decisions and adversely impacting the defendant. Between 2018 and 2024, the parties appeared before this Court on numerous occasions. Yet, neither the government nor Mr. Brindley told the Court, or Mr. Miller, that his counsel labored under a conflict. The Constitution requires more.

Mr. Miller has filed a Motion for a New Trial and a Motion for Acquittal. *See* ECF Nos. 455 and 456. In his Rule 33 Motion, Mr. Miller argues that his former attorney, Beau Brindley, was under investigation by the Department of Justice—a fact known to both Brindley and the government before, during, and after trial and yet never disclosed to Mr. Miller or the Court. This constitutional failure could have been entirely avoided had the government simply done what it was required to do and disclosed the investigations into Mr. Miller's counsel, even *ex parte*, and sought a conflict waiver. That did not occur.

Mr. Miller contends that Mr. Brindley's undisclosed and unwaived conflict of interest violated his Sixth Amendment right to counsel. *See* ECF No. 455. The government opposes the motion. *See* ECF No. 484. The Court has ordered an evidentiary hearing.

At the April 17, 2025, status hearing, the Court instructed the parties to meet and confer "on those facts that they do agree on that are relevant to that analysis." ECF No. 510, Status Hearing Tr. at 13:9-11. The Court further instructed the parties:

> What I would anticipate is there would be a stipulation as to the important facts that both sides believe the Court would need to rely upon to make a determination that are not in dispute and then to identify, in addition to that stipulation, the facts that are in dispute so I know I'm teed up to figure out exactly which area of inquiry and what disputes I need to make a determination. *Id.* at 21:20-22:1

Recognizing the burden of proof rests with the movant, the defense is working diligently to develop the factual record and present the necessary evidentiary proof for Your Honor's consideration. The defense's investigation is ongoing. It is our profound (and hopefully realistic) expectation that certain background facts will be uncontested at the evidentiary hearing.[1] Several of the following facts are taken from the government's own

[1] The defense requests that the Court order the government to file a written response to this

public filings, its statements and representations to this Court and other judges in this District, and law enforcement reports.

Mr. Miller anticipates his evidentiary proof will take no more than one day of testimony. Undersigned counsel MIANGEL CODY and CHRISTOPHER PARENTE, for DEFENDANT KEVIN MILLER, submit the following attorney proffer of anticipated evidence:

## I. ATTORNEY PROFFER OF ANTICIPATED EVIDENCE

Our circuit's law is clear: An undisclosed and unwaived actual conflict of interest violates the Sixth Amendment right to counsel which entitles defendants "to representation by an attorney completely loyal to their cause, unfettered by any conflict of interest." *See Lafuente v. United States*, 617 F.3d 944 (7th Cir. 2010); *United States v. Lowry*, 971 F.2d 55 (7th Cir. 1992) (citing *Cuyler v. Sullivan*, 446 U.S. 335 (1980)).

Mr. Miller's ineffective-assistance-of-counsel claim is predicated upon his contention that his prior counsel Beau Brindley labored under an actual conflict of interest. To prevail, Mr. Miller must establish (a) an actual conflict of interest existed, (b) his counsel's performance was deficient, and (c) the conflict adversely impacted the defendant. *Cuyler v. Sullivan,* 446 U.S. 335, 348 (1980). In support of his Motion for a New Trial, the defense intends to present evidence that:

(A) An actual conflict of interest existed because Mr. Miller's attorney, Beau Brindley, was under at least one, and possibly multiple, federal investigations during seven years

evidentiary proffer within 30 days. It is the defense's position that a written response will assist the Court and undersigned counsel in determining precisely which facts are controverted and the factual basis for the government's objection.

of representing Mr. Miller; (B) Because Mr. Brindley acted under an undisclosed and unwaived conflict of interest, his performance was demonstrably deficient because counsel (1) failed to meet with Kevin Miller to review discovery, learn facts about the case, and explain the benefits of a plea and risks of a trial; (2) failed to adequately explain the government's plea offer, which removed the significant ten-year mandatory minimum penalty; and (3) failed to investigate or file any pretrial motions; and (C) Mr. Brindley's deficient performance adversely impacted Mr. Miller, who is now subject to a 15-year mandatory minimum sentence and an increased statutory maximum following trial.[2]

### A. Evidence that an Actual Conflict of Interest Existed Between Kevin Miller and Attorney Beau Brindley

*"If a criminal defendant's attorney is under investigation by the prosecutors of [his] client, there is a conflict." Lafuente v. United States*, 617 F.3d 944, 946 (7th Cir. 2010).

Mr. Miller contends that, during the pendency of his case, attorney Beau Brindley was under investigation by the U.S. Department of Justice in at least one investigation and possibly several separate investigations, with the investigations beginning no later than October 30, 2018. In response, the government has represented to this Court that (a) the investigation of Brindley was led by the US Attorney's Office for the Northern District of Indiana, with no involvement of the NDIL USAO; and (b) the NDIN investigation was only "open between June of 2020 and December 2021." *United States v. Castaneda et al.*, 1:17-cr-319-4. ECF No 484,

[2] The Seventh Circuit has held that "[a] defendant who knowingly and intelligently waives his attorney's potential or actual conflict of interest may not, under any circumstances, later claim that such a conflict deprived him of his right to effective assistance of counsel." *Harvey v. McCaughtry*, 11 F.3d 691, 695 (7th Cir. 1993). The parties agree and the Court previously noted that no waiver occurred in this case. ECF No. 510, Status Hearing Tr. at 13:12-13.

Attachment A.[3] The defense challenges the government's assertions and proffers the following facts concerning the DOJ's investigation(s) of Beau Brindley:

1. On May 15, 2017, Kevin Miller was indicted for possessing with the intent to distribute at least 400 grams of fentanyl, in violation of Title 21, U.S.C. § 841(a)(1)(A). Based upon the charged drug amount, Mr. Miller faced a 10-year mandatory minimum penalty. *United States v. Castaneda et al.*, 1:17-cr-319-4.

2. The government subsequently filed an 851 Enhancement seeking increased punishment against Mr. Miller. Because he had one prior qualifying drug conviction, Mr. Miller's mandatory minimum penalty increased from 10 years' to 20 years' imprisonment. *United States v. Castaneda et al.*, 1:17-cr-319-4, ECF No. 142.

3. On May 18, 2017, Beau Brindley, an attorney licensed in the State of Illinois, entered an appearance to represent Kevin Miller in the case of *United States v. Castaneda et al.*, 1:17-cr-319-4. ECF No 37.

4. Attorney Brindley represented Mr. Miller from May 2017 through August 2024.

5. Mr. Miller paid Beau Brindley approximately $200,000 to represent him in the case of *United States v. Castaneda et al.*, 1:17-cr-319-4.[4]

6. Attorney Brindley acted as Miller's lead counsel during the pretrial, plea negotiation, and trial stages of Mr. Miller's case, which lasted over seven years.

7. No later than July 27, 2017, NDIL Assistant United States Attorney Matthew Kutcher appeared on behalf of the government in Mr. Miller's prosecution. ECF No. 93.

In response to Mr. Miller's Motion for a New Trial, the government contends no conflict of interests exists because "the investigation into Brindley conducted by ATF and the

---

[3] Pursuant to this Court's Order, the parties conferred by telephone on August 21, 2025. During that meet and confer, the government advised defense counsel that the NDIL USAO neither participated in nor directed the investigation of Beau Brindley.

[4] There was never a formal written retention agreement provided to Mr. Miller, nor was there a schedule for payment of Brindley's fee. Mr. Miller had paid Mr. Brindley approximately $175,000 – in cash – by the time the plea agreement was provided to the defense. During the trial, Brindley refused to cross-examine the lead cooperating witness unless Miller paid him an additional $25,000.

Northern District of Indiana (about which Brindley learned during the *Ferguson II* sentencing hearing)—have no connection, bear no resemblance, and had no impact on this case." *United States v. Castaneda et al.*, 1:17-cr-319-4, ECF No. 484 at 5.

***First***, as a threshold matter, the government's argument rests on a distinction without a difference because *the DOJ* authorized the investigation of Beau Brindley and, simultaneously, *the DOJ* prosecuted Mr. Miller. *See United States v. Barket,* 530 F.2d 189, 195 (8th Cir. 1976) (stating different offices of a federal agency "must know what another office of the same agency is doing or has done regarding the accused."). ***Second***, the critical fact here is that Mr. Brindley learned of the federal investigation *from the NDIL USAO*. Further still, neither U.S. Attorney's Office – NDIL nor NDIN – ever informed Mr. Brindley that the investigation solely involved Indiana prosecutors. Therefore, it was reasonable for Mr. Brindley to believe the NDIL USAO was involved. The NDIL USAO never told him otherwise. Having disclosed to Brindley that he was under federal investigation, the NDIL USAO cannot now argue the harm to Mr. Miller is immaterial simply because another district potentially led that investigation.[5] The Sixth Amendment problem exists precisely because NDIL (a) revealed the federal investigation to Brindley and (b) failed to inform him that the investigation was led by a different prosecutor's office. ***Third***, the government's assertion that the investigation solely involved the Indiana prosecutor's office is demonstrably false based on their own reports and records.

[5] As discussed in Paragraph 24, *infra,* ATF Special Agent Christopher Labno testified that the criminal investigation into Brindley was approved by the Main Justice office at DOJ. *United States v. Ferguson*, 18-cr-734-1, (N.D. Ill.), ECF No. 508 at 276. Thus, what matters is that Brindley believed he was the target of a federal criminal investigation. This Court and Mr. Miller had the right to know that Brindley was operating under that belief.

On April 17, 2025, the Court ordered an evidentiary hearing because a more fully developed record is necessary to resolve Mr. Miller's motion. Specifically, the Court stated that it needs a complete factual record on "the timing of the investigation in terms of who is involved, what they did, what offices were involved, what agencies were involved, at what points do we know … the lawyer knew the relevant facts." ECF No. 510, Status Hearing Tr. at 13:1-7. To present a complete factual record to the Court, the defense proffers the following:

8. In October 2018, the government filed a Complaint against Terry Ferguson. Ferguson was ultimately charged with drug and gun violations that were unrelated to Kevin Miller's case. The Ferguson prosecution is docketed in the Northern District of Illinois at 1:18-cr-00734 (*Ferguson I*)

9. As in Mr. Miller's case, attorney Beau Brindley represented defendant Terry Ferguson in *Ferguson I*. 1:18-cr-00734, ECF No. 19.

10. As in Mr. Miller's case, NDIL Assistant United States Attorney Matthew Kutcher represented the government in the *Ferguson I* prosecution. 1:18-cr-00734, ECF No. 2.

11. On October 29, 2018, United States Magistrate Judge Jeffrey Cole signed the warrants to arrest Terry Ferguson and to search his Willowbrook, Illinois residence. *Ferguson I,* 1:18-cr-00734-1, ECF Nos. 3, 4.

12. On October 30, 2018, ATF Agents assigned to the Chicago Field Office, along with state and local law enforcement, arrested Terry Ferguson and searched his residence.[6] *Ferguson I,* 1:18-cr-00734-1, ECF No. 13.

13. The ATF Agents present during Terry Ferguson's arrest included the following: Christopher Labno, Christopher Burney, Madison Johnson, Brett O'Connor, Craig Fries, Group Supervisor Bennie Mims and Task Force Officers Walter Bucki, Christopher Stenzel, Sergeant Thomas Hamilton. *Ferguson I,* 1:18-cr-00734-1, ECF No. 161, Attachment A at 1.

14. ATF Agents from the Chicago Field Office, including Special Agent Christopher Labno and Special Agent Christopher Burney, conducted a post-arrest interview of Terry Ferguson on October 30, 2018. *Ferguson I,* 1:18-cr-

[6] While the defense agrees with the government that Terry Ferguson's *charges* are unrelated to Mr. Miller's, the *circumstances* of Ferguson's arrest and questioning by Chicago-based federal agents are relevant to when Beau Brindley first learned of the DOJ's investigation of him.

00734-1, ECF No. 161, Attachment A at 1.

15. Special Agent Christopher Labno prepared a Report of Investigation ("ROI") documenting the ATF's post-arrest questioning of Terry Ferguson. The Labno ROI is dated November 19, 2018. *Ferguson I,* 1:18-cr-00734-1, ECF No. 161, Attachment A at 1.

16. According to Agent Labno's ROI, investigators told Terry Ferguson during post-arrest questioning that they believed his lawyer Beau Brindley was involved in "something shady" and "by 'shady' they meant criminal conduct." *Ferguson I,* 1:18-cr-00734-1, ECF No. 161, Attachment A at 3.

| Title of Investigation: | Investigation Number: | Report Number: |
|---|---|---|
| [redacted] | [redacted] | 172 |

investigating me you know that." S/A Labno stated that he understood that but that the USAO would ask for specifics. S/A Labno then asked if FERGUSON was willing to make buys of narcotics from his drug suppliers. FERGUSON stated that this would be easy. Agents told FERGUSON that they were also interested in buying illegal guns. FERGUSON indicated that while not as easy as drugs, "that can still happen." S/A Labno then told FERGUSON that investigators believed that he was involved in something shady with his lawyer Beau (BRINDLEY). FERGUSON replied, "Yeah?" Agents then indicated that by "shady," they meant criminal conduct. FERGUSON responded, "Yeah, like I said everything is on the table." S/A Labno again stated that the USAO would want specifics before they would agree with Agents to release FERGUSON. S/A Labno asked FERGUSON if he (FERGUSON) had BRINDLEY "dead to rights" on criminal conduct. FERGUSON responded, "I believe I do." Agents then asked if FERGUSON would be willing to proactively cooperate against BRINDLEY as well as the other individuals whom they discussed. FERGUSON stated that he would, saying, I told you I'm with you a thousand percent."

17. According to Agent Labno's ROI, ATF Agents asked Terry Ferguson to cooperate against his attorney Beau Brindley and indicated "the USAO would want specifics before they would agree with Agents to release Ferguson."[7] *Ferguson I,* 1:18-cr-00734-1, ECF No. 161, Attachment A at 3.

18. Special Agent Christopher Burney also prepared a Report of Investigation ("ROI") documenting the ATF's post-arrest questioning of Terry Ferguson. The Burney ROI is dated November 16, 2018. *Ferguson I,* 1:18-cr-00734-1, ECF No. 161, Attachment A at 10.

19. According to Agent Burney's ROI, ATF agents questioned Ferguson "regarding suspicions that he was involved in criminal activity with his attorney" and "asked Ferguson if he knew his attorney to be involved in criminal activity." Agents then "told Ferguson that they would need more from him in order to convince the USAO that he would be a valuable cooperator." An excerpt of Agent Burney's ROI states as follows:

[7] As noted below, Agent Labno later testified that he had previously received approval from Main Justice to begin this criminal investigation into Brindley. We have requested the government to produce communications between Agent Labno and whichever USAO he was working with at this time. The government has not produced anything to date.

9. Agents told FERGUSON that they wanted to revisit a prior conversation (this conversation is documented in another Report of Investigation (ROI)) regarding suspicions that he was involved in criminal activity with his attorney. FERGUSON replied, "But that's not true. I'm not involved in no shady shit with him. I know that he's uh…well, like I said, you tell me what you want and we'll go from there. If I can help you, I'll help." Agents asked FERGUSON if he knew his attorney to be involved in criminal activity. FERGUSON replied, "All depends on what's…like I said, until I see something that's with me, you know, he's the man that's…" Agents again reminded FERGUSON about their conversation earlier regarding guys involved in criminal activity, FERGUSON replied, "I said that I can help you."

10. Agents again asked FERGUSON what he wanted. FERGUSON explained that he was still detained and wanted to go home. FERGUSON then suggested that he wanted to talk more in another room that wasn't being audio and video recorded. Agents told FERGUSON that they could make that happen. Agents told FERGUSON that they would need more from him in order to convince the USAO that he would be a valuable cooperator. FERGUSON stated, "There's not really much that I'm on, caught on, right now anyway, the convincing couldn't be that hard. I'm gonna do what you want. You want to talk about Beau, you want to talk about everyone, that's fine." FERGUSON continued, "And I knew you were a cop the whole time, I told you that remember." S/A Labno asked FERGUSON, "Then why were you involved in doing that?" FERGUSON responded, "Well, every time you asked me for guns or coke, what did I tell you? On camera, no I don't do that, it's cash." FERGUSON continued, "You're talking Beau, not a problem, you have to do your end now."

20. No later than December 13, 2019, the United States Attorney's Office for the Northern District of Illinois informed Beau Brindley that he was under federal investigation. *See Ferguson I,* 1:18-cr-00734-1, ECF No. 161, Attachment A.[8]

21. The NDIL USAO disclosed the federal investigation to Beau Brindley when it produced Rule 16.1 materials to Brindley in *Ferguson I*, including the Labno and Burney ATF reports that Brindley was under federal investigation and federal agents were seeking cooperation against him.

22. Specifically, NDIL AUSA Matthew Kutcher – the lead prosecutor in Mr. Miller's case ***and*** Mr. Ferguson's cases – tendered the *Ferguson I* Rule 16.1 materials and enclosed the Labno and Burney ATF reports to Mr. Brindley.

23. In October 2023, ATF Agent Labno testified in *Ferguson I* concerning the ATF's 2018 post-arrest questioning of Terry Ferguson and the DOJ's investigation of attorney Brindley. *Ferguson I*, 18-cr-734-1, ECF No. 508 at 273.

24. ATF Agent Labno testified that his 2018 post-arrest questioning of Ferguson occurred ***after*** the Department of Justice in Washington, D.C. authorized an investigation of Beau Brindley, stating: "We had received permission from Main Justice." *Ferguson I*, 18-cr-734-1, (N.D. Ill.), ECF No. 508 at 276.[9]

---

[8] The Court can reasonably infer that Mr. Brindley became aware of the ATF's investigation no later than December 13, 2019, because Mr. Brindley attached copies of the Labno and Burney reports to a Motion to Suppress that he filed on that date. *Ferguson I,* 1:18-cr-00734-1, ECF No. 161, Attachment A.

[9] Based on Agent Labno's sworn testimony that DOJ permission for an investigation of Brindley was granted prior to October 2018, and the Northern District of Indiana USAO January 2025 Letter

25. Agent Labno's sworn testimony was as follows:

| | |
|---|---|
| Attorney Beau Brindley: | Q. Certainly you made it clear in this discussion that you wanted or one of the things you wanted was for him [Defendant Ferguson] to give some kind of information about his lawyer, me, right? |
| ATF Special Agent Labno: | A. We asked him about multiple people. You were included, yes, sir. |
| Attorney Beau Brindley: | Q. Okay. And you said you wanted him to potentially proactively cooperate against his lawyer, right? |
| ATF Special Agent Labno: | A. You, among others, yes, sir. |
| Attorney Beau Brindley: | Q. Okay. Agent Labno, first of all, did you have authorization from the Department of Justice to be investigating a lawyer in this district when you went out there? |
| ATF Special Agent Labno: | A. We had received permission from Main Justice. I honestly don't remember the date. |

26. On cross-examination in *Ferguson I*, the government committed Agent Labno to the following testimony: "Was there, in fact, a DOJ-approved investigation of Beau Brindley?" Agent Labno responded: "Yes." *Ferguson I*, 18-cr-734-1, ECF No. 508 at 331.

27. Although the government represented to this Court that the DOJ's investigation of Brindley occurred between "June 2020 and December 2021" and was strictly limited to a tax investigation led exclusively by the Northern District of Indiana Office," ATF Special Agent Christopher Labno testified before Judge Kennelly in *Ferguson I* that the investigation he was working began *no later than 2018* and commenced only after Main Justice authorization. *Compare United States v. Castaneda et al.*, 1:17-cr-319-4. ECF No. 484, Attachment A, *with United States v. Ferguson*, 18-cr-734-1, (N.D. Ill.), ECF No. 508 at 276.

stating its investigation was not opened until 2020, it appears Mr. Brindley was the target of at least two separate DOJ investigations during the time he represented Mr. Miller.

28. Agent Labno testified in *Ferguson I* that he (Labno) was in direct telephone communication with NDIL AUSA Matthew Kutcher during the post-arrest questioning of Terry Ferguson. *Ferguson I*, 18-cr-734-1, ECF No. 508 at 350.

29. Beau Brindley became aware of the federal investigation of him no later than December 13, 2019, when he attached ATF Special Agent Labno's report to a defense filing in *Ferguson I.* 1:18-cr-00734-1, ECF No. 161, Attachment A.

30. The government has conceded that, no later than December 13, 2019, Beau Brindley became aware the federal government was investigating him. *Ferguson I* 1:18-cr-00734-1, ECF No. 497 at 4, fn 1.

31. The government has conceded that the "authorized criminal investigation" of Beau Brindley concerned potential crimes committed "within the Northern District of Illinois." *United States v. Castaneda et al.*, 1:17-cr-319-4. ECF No. 484, Attachment A

32. No later than October 20, 2023, during Agent Labno's testimony, Mr. Brindley became aware that the federal investigation had been authorized by Main Justice of the DOJ. *United States v. Ferguson*, 18-cr-734-1, (N.D. Ill.), ECF No. 508 at 276.

During the pendency of Miller's case, the NDIL USAO moved to disqualify Brindley from representing defendant Terry Ferguson. Yet, the government failed to inform either Mr. Miller or this Court of the unconstitutional conflict it created. *See United States v. Jarrett*, 447 F.3d 520, 530 (7th Cir. 2006) ("After all, it would have been irresponsible of the government not to notify the judge of a potential problem that could affect [a defendant's] right to conflict-free counsel."). The defense proffers the following facts:

33. On December 13, 2018, the government filed a second complaint against Terry Ferguson, docketed in the Northern District of Illinois at 1:18-cr-00858 (*Ferguson II*).

34. In *Ferguson II*, the government charged Mr. Ferguson with attempting to intimidate a grand jury witness in the *Ferguson I* proceedings. 1:18-cr-00858, ECF No. 40.

35. As in *Ferguson I* and Mr. Miller's case, Attorney Beau Brindley represented defendant Terry Ferguson in *Ferguson II*, 1:18-cr-00858, ECF No. 9.

36. As in *Ferguson I* and Mr. Miller's case, NDIL AUSA Matthew Kutcher represented the government in the *Ferguson II* prosecution.

37. Throughout 2019, AUSA Matthew Kutcher continued to represent the government in the second Ferguson prosecution.

38. On February 5, 2019, NDIL AUSA Matthew Kutcher filed a motion to disqualify Beau Brindley from representing Terry Ferguson and argued: "The fact that ***Mr. Brindley is a subject of the investigation*** creates a conflict of interest and at a minimum requires that defendant Terry Ferguson knowingly waives such a conflict." Urging Brindley's disqualification, the NDIL USAO cited the case of *United States v. Balzano*, 916 F.2d 1273, 1293 (7th Cir. 1990) and quoted the Seventh Circuit Court of Appeals: "[W]e have held that an 'actual conflict of interest' exists only where there is a danger that the defense attorney would ineffectively represent his client because of fear that authorities might become aware of the attorney's own misconduct if he undertook effective representation." 1:18-cr-00858, ECF No. 74 at 7, n. 3 (emphasis added).

39. AUSA Kutcher's February 2019 motion to disqualify Mr. Brindley in *Ferguson II* referenced an investigation into whether Mr. Brindley committed or encouraged grand-jury witness tampering in December 2018. That criminal conduct is separate from – and occurred after – Agents Labno and Burney sought Mr. Ferguson's cooperation in November 2018.

40. On March 7, 2019, Judge Charles Norgle granted the government's motion to disqualify Beau Brindley in *Ferguson II.* 1:18-cr-00858, ECF No. 110.

41. On October 22, 2019, Judge Norgle denied Mr. Brindley's motion to reenter an appearance in *Ferguson II.* Judge Norgle stated Brindley "downplays the reason for his disqualification, which stems from his apparent entanglement with the criminal obstruction that each of the three defendants in this case have now pleaded guilty to." *Ferguson II.* 1:18-cr-00858, ECF No. 204.

Your Honor has presided over Mr. Miller's case for seven years. NDIL AUSA Matthew Kutcher appeared before this Court on numerous occasions as the lead prosecutor in Mr. Miller's case and knew of the DOJ's Brindley investigation(s). Your Honor held numerous status hearings, a pretrial conference, and ordered periodic status reports. Yet, the government remained inexplicably mute and never disclosed the conflicts issue to this Court.

Mr. Miller anticipates the evidence will also show that, throughout the pretrial

proceedings, plea negotiations, and trial, Attorney Beau Brindley knew and reasonably believed he was under at least one, and possibly multiple, DOJ investigations. A fact he failed to disclose to Mr. Miller. Equally important, Beau Brindley was not informed that the investigation was closed until ***after*** he withdrew from Mr. Miller's representation. We proffer the following:

42. On August 20, 2024, Beau Brindley filed a motion to withdraw as Mr. Miller's counsel, and that motion was granted on August 29, 2024. *United States v. Castaneda et al.*, 1:17-cr-319-4. ECF Nos. 430, 435.

43. On January 7, 2025, the Indiana USAO sent a letter to Beau Brindley indicating it "had an investigation open between June of 2020 and December of 2021." *United States v. Castaneda et al., 1:17-cr-319-4, ECF No. 484*, Attachment A (hereafter, "Indiana USAO January 2025 Letter").

***U.S. Department of Justice***

*United States Attorney*
*Northern District of Indiana*

*Clifford D. Johnson*
*United States Attorney*

*5400 Federal Plaza, Suite 1500*
*Hammond, Indiana 46320*

*(219) 937- 5500*
*FAX: (219) 852- 2770*
*TTD: (219) 933- 1250*

January 07, 2025

Beau Brindley
53 W Jackson Blvd # 1410
Chicago, IL 60604

Re: Federal Tax Investigation

Dear Mr. Brindley:

This letter is to inform you that the United States Attorney's Office for the Northern District of Indiana had an investigation open between June of 2020 and December of 2021 concerning potential federal tax crimes committed by you within the Northern District of Illinois. I am writing to inform you that based on information presently known to the government and the principles of federal prosecution, our office closed this authorized criminal investigation in December of 2021.

This letter should not be interpreted as an exoneration or a "clean bill of health." Additionally, this letter does not confer any protection against future investigative or prosecutorial action with respect to this or any other matter.

This letter does not bind any federal, state, or local law enforcement or prosecuting authority, nor does it address or limit any civil or administrative action that a federal, state, or local authority may pursue with respect to this or any other matter.

Sincerely,

CLIFFORD D. JOHNSON
UNITED STATES ATTORNEY

By: /s/ Thomas M. McGrath
Thomas M. McGrath
Assistant United States Attorney

44. The Indiana USAO's January Letter stated its "***authorized criminal investigation***" concerned "potential federal tax crimes committed by you ***within the Northern District of Illinois.***" *Id.* (emphasis added)[10]

45. The Indiana USAO's January Letter informed Brindley that its authorized criminal investigation closed in December 2021. *Id.*

46. The Indiana USAO's January 2025 Letter was sent to Beau Brindley well after the pretrial proceedings, plea negotiations, and trial proceedings in Mr. Miller's case.

47. The Indiana USAO's January 2025 Letter was sent to Brindley after he had withdrawn as Mr. Miller's counsel in August 2024.

48. The DOJ did not provide Beau Brindley with actual notice that he was no longer subject to the Indiana investigation until January 7, 2025.

49. Curiously, the Indiana USAO's January 2025 Letter was sent to Beau Brindley after Mr. Miller filed his Motion for a New Trial, raising his Sixth Amendment claim and after Your Honor ordered the government to respond to Mr. Miller's motion.

**B. Attorney Beau Brindley's Performance was Deficient.**

As the movant, Mr. Miller must next demonstrate the conflict adversely impacted his counsel's representation. A conflict between a client and defense counsel can cause deficient performance in three principal ways. First, "[a] lawyer in these circumstances, while dealing on behalf of his client with the office that is prosecuting him personally may, consciously or otherwise, seek the goodwill of the office for his own benefit." *Armienti v. United States*, 234 F.3d 820, 825 (2d Cir. 2000). Next, the Seventh Circuit has recognized the other end of the spectrum holds a risk far more relevant here: that a lawyer facing charges from the same

[10] Assuming the NDIN Office was charged with investigating Brindley's alleged criminal conduct based on conflict issues with the NDIL Office handling the investigation, this fact was certainly never disclosed to Brindley. For conflict purposes, which USAO ran the investigation is completely immaterial. What is material is that Mr. Brindley knew he was under DOJ investigation, that investigation was being handled by Chicago federal agents, and the same NDIL AUSA Matthew Kutcher was the lead prosecutor in all three cases (Miller, *Ferguson I* and *Ferguson II*).

authorities prosecuting his client "would be unduly hostile toward [the prosecution], losing objectivity, and thus harm [the lawyer's] rapport with the jury." *United States v. Lowry*, 971 F.2d 55, 61 (7th Cir. 1992). Finally, in between those extremes, a "lawyer's own criminal investigation [might] cause him to devote less time to his representation of [his client] and to be ill-prepared and distracted at trial." *Armienti* 234 F.3d at 824–25; *cf. Herrera v. Russi*, No. 95-CV-187 (CPS), 1996 WL 651017 at *9 (E.D.N.Y. Nov. 6, 1996) (observing that even where a lawyer is facing solely non-criminal disciplinary charges "a conflict could arise simply because it is plausible [the lawyer] was unable to zealously represent the petitioner because of [the lawyer's] preoccupation with the investigation into his competence and his possible suspension or disbarment"). The defense proffers the following facts:

**Deficient Performance 1: Attorney Brindley Failed to Adequately Explain the Plea Offer to Kevin Miller.[11]**

50. On February 8, 2024 – only months before Mr. Miller's trial commenced – Mr. Brindley made the following admission in a public filing:

> "[L]earning that there was a DOJ-approved investigation certainly was a shocking revelation that ***created extreme disdain for the prosecutors who would pursue such an endeavor.*** That disdain has the capacity to create a potential or actual conflict of interest and thereby required colloquy." *Ferguson I,* 1:18-cr-00734-1, ECF No. 498 at 3 (emphasis added).

51. By his own admission, Mr. Brindley has described experiencing "rage and aggravation" after learning the DOJ authorized an investigation of him. According to Mr. Brindley, "the anger in response to Labno's answer cannot be denied. It occurred." *Ferguson I,* 1:18-cr-00734-1, ECF No. 498 at 3, 5.

52. In 2023, after learning that Main Justice authorized an investigation, Mr.

[11] As the Supreme Court has observed: "to assess the impact of a conflict of interests on the attorney's options, tactics, and decisions in plea negotiations would be virtually impossible." *Holloway v. Arkansas*, 435 U.S. 475, 491 (1978). The defense proffers the following anticipated evidence pertaining to Mr. Brindley's performance during plea negotiations.

Brindley was derelict in his ethical duty to communicate with Mr. Miller, failing to respond to Mr. Miller's repeated attempts to communicate and essentially ghosting him.

53. **<u>Attorney Phillip Turner:</u>** If called to testify, the defense expects Attorney Phillip Turner would testify as follows:

54. In 2023, after receiving no substantive updates from Mr. Brindley, Mr. Miller consulted an additional attorney Phillip Turner—not to join the defense team, but simply to obtain basic information about his case because Mr. Brindley had stopped communicating with him.

55. Mr. Miller paid Mr. Turner approximately $5000 for a consultation.

56. Mr. Miller told Mr. Turner that he was seeking additional legal advice because his lawyer, Beau Brindley, had not been responding to him.

57. Mr. Turner never filed an appearance and did not represent Mr. Miller in plea negotiations with the government, nor did attorney Turner receive any plea offer or draft plea agreements from the NDIL U.S. Attorney's Office.

58. Mr. Turner's involvement was limited to legal research and advising Mr. Miller generally about his case.

59. Mr. Turner became aware that Mr. Miller had made multiple attempts to contact attorney Beau Brindley regarding the status of Mr. Miller's case.

60. On multiple occasions, Mr. Miller informed Mr. Turner that emails, phone calls, and messages to Brindley went unanswered over a period of several months prior to his trial date, including critical periods during which motions in limine were due and plea decisions or responses were due.

61. Mr. Miller provided Mr. Turner contemporaneous examples of his efforts to communicate with Beau Brindley. For example, on May 17, 2024, Mr. Miller sent Mr. Turner a copy of a text message he had sent to attorney Brindley, which Mr. Miller stated in summary: I get you spoke to the feds to resolve this case. What options are currently being discussed? What options are available for us not to go forward with the trial?

62. Mr. Miller informed Mr. Turner that attorney Brindley had failed to respond to his expressed desire to plead guilty and resolve the case without going to trial.

63. Mr. Miller was scheduled for a plea hearing to take place on May 31, 2024. *United States v. Castaneda et al.*, 1:17-cr-319-4. ECF No. 381, 384.

64. On May 30, 2024 at approximately 2:26pm, the parties emailed an unsigned copy of the proposed plea agreement to Your Honor's courtroom deputy.

**From:** Arce, Jimmy (USAILN)
**To:** Gloria Lewis; bbbrindley_gmail.com
**Cc:** Mike Thompson; Donohue, Megan (USAILN)
**Subject:** RE: US v. Miller, 17 CR 319: Change of Plea
**Date:** Thursday, May 30, 2024 2:26:00 PM
**Attachments:** 24-05-30 Miller Plea Agreement.pdf

Here is an unsigned copy. Thank you

**From:** Gloria Lewis <Gloria_Lewis@ilnd.uscourts.gov>
**Sent:** Thursday, May 30, 2024 2:15 PM
**To:** Arce, Jimmy (USAILN) <JArce@usa.doj.gov>; bbbrindley_gmail.com <bbbrindley@gmail.com>
**Cc:** Mike Thompson <mthompson@brindleylaw.com>; Donohue, Megan (USAILN) <MDonohue2@usa.doj.gov>
**Subject:** [EXTERNAL] RE: US v. Miller, 17 CR 319: Change of Plea

Okay thanks

65. On May 30, 2024, Mr. Miller was unaware that the plea agreement had already been sent to this Court, unaware of key details contained in the plea agreement the Court received, and unaware what would occur at the plea hearing on the following day.

66. Specifically, on May 30, 2024, at approximately 9:10pm, Mr. Turner asked Mr. Miller whether he knew what was going to occur at the plea hearing on the following day.

67. On May 30, 2024 – after the draft plea was sent to the Court – Mr. Miller responded to Mr. Turner that, according to Mr. Brindley, Brindley had not received the final plea, that he (Miller) could remain on bond if he accepted the plea, and he had not yet received the final plea.[12]

68. The defense anticipates Attorney Turner would further testify that, on the day before the scheduled plea hearing, Mr. Miller told Turner: "I am just preparing for the worst."

69. The defense anticipates Mr. Turner would testify that, based upon his conversations and observations of Mr. Miller, Mr. Miller was unaware that the final proposed plea agreement had already been sent to the Court and he was uninformed about the details of the plea.

70. Mr. Turner reviewed the court docket in Mr. Miller's case and observed that defense filing deadlines passed without action or explanation on attorney Brindley's part, and Mr. Miller was not informed of these developments in a

[12] The fact that Mr. Miller erroneously believed he could remain on bond after a plea underscores he was unaware of the plea's consequences. The Court had already ordered Mr. Miller would go into federal custody immediately after the plea was entered.

timely manner.

71. Attorney Turner reviewed the government's public filings on the case docket and informed Mr. Miller of his (Turner's) best guess about how the case was proceeding. For example, it was Attorney Turner, not Attorney Brindley, who informed Mr. Miller that the case was going to trial.

72. Mr. Turner would testify that, based upon his experience, information, and belief, the absence of timely and clear communication from attorney Brindley to Kevin Miller, Jr. fell below the standard of diligence and competence expected of attorneys in our jurisdiction.

**Deficient Performance 2: Attorney Brindley Failed to File Any Pretrial Motions on Mr. Miller's Behalf.**

73. Attorney Brindley represented Mr. Miller from May 2017 through August 2024. During this time, the government produced discovery to Mr. Brindley.

74. Mr. Brindley failed to discuss the filing of any pretrial motions with Mr. Miller.[13]

75. Mr. Brindley failed to file a single pretrial motion on Mr. Miller's behalf, and he also failed to respond to the government's pretrial motions. ECF No. 374.

76. During the entire seven years that he represented Mr. Miller and for $200,000 in legal fees, Mr. Brindley filed only one substantive motion in the case – a 5-page Motion to Exclude Evidence that was filed (and denied) mid-trial.

### C. Attorney Beau Brindley's Deficient Performance Adversely Impacted Mr. Miller Because He is Now Subject to a 15-year Mandatory Minimum *and* a Statutory Maximum Life Sentence After Trial.

The Supreme Court has held that "a defendant who shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice in order to obtain relief." *Cuyler*, 446 U.S. at 349–50. When a defendant demonstrates an actual conflict of interest exists between himself and his lawyer, our circuit's caselaw presumes prejudice. *See*

[13] During the seven years Mr. Brindley represented Mr. Miller, they met in person only once—for about 15 minutes. At that meeting, they discussed the plea offer in general terms but never addressed the plea agreement's effect on the mandatory minimum, statutory maximum, or the operative guidelines. They also did not discuss the filing of pretrial motions or responding to the government's motions.

*Spreitzer v. Peters*, 114 F.3d 1435, 1450 (7th Cir. 1997) ("[W]here a conflict of interest provides the predicate for an ineffective assistance claim, a defendant bears a lighter burden with regard to demonstrating prejudice."). "This presumption of prejudice is necessary because a true conflict of interest forecloses the use of certain strategies and thus the effect is difficult if not impossible to measure." *Id.* (citing *United States v. Fish*, 34 F.3d 488, 492 (7th Cir. 1994)). In this context, Mr. Miller need only demonstrate an adverse impact on his counsel's performance. *Id.* Mr. Brindley's deficient performance adversely impacted Mr. Miller in two respects: (1) Mr. Miller is now subject to a 15-year mandatory minimum; and (2) Mr. Miller is now subject to an increased statutory maximum of life imprisonment. We proffer as follows:

77. The Indictment charges that Mr. Miller possessed with the intent to distribute at least 400 grams of fentanyl, in violation of Title 21, U.S.C. § 841(a)(1). *United States v. Castaneda et al.*, 1:17-cr-319-4.

78. On November 22, 2017, the government filed a notice pursuant to Title 21, United States Code, Section 851, that based on a qualifying prior narcotics conviction, the maximum penalties Mr. Miller faced upon conviction would be a term of imprisonment of not less than 20 years and not more than life, a fine not to exceed $10,000,000, and a term of supervised release of at least 10 years, pursuant to Title 21, United States Code, Sections 841(b)(1)(A). ECF No.142.

79. Mr. Brindley failed to adequately and effectively explain to Mr. Miller the impact of the government's 851 Enhancement and the then-applicable 20-year mandatory minimum sentence it triggered.

80. On December 21, 2018, the First Step Act was implemented. Given the government's 851 Enhancement, the First Step Act reduced the mandatory minimum penalty Mr. Miller faced from a 20-year minimum to a 15-year minimum.

81. Mr. Brindley failed to adequately and effectively explain to Mr. Miller the First Step Act's impact on the mandatory minimum sentence he faced upon conviction.

82. On May 20, 2024, the government emailed Mr. Brindley a draft plea agreement, approved by the U.S. Attorney's Office chain of command.

83. The government's plea offer would allow Mr. Miller to plead to a superseding information that charged him with knowingly and intentionally possessing with intent to distribute and distribute a quantity of a mixture and substance containing a detectable amount of fentanyl, in violation of Title 21, United States Code, Section 841(a)(1).

84. As part of the proposed plea offer, the government agreed to not charge any drug quantity that would trigger a mandatory minimum sentence and it agreed to withdraw the 851 Enhancement against Mr. Miller.

85. The government's plea offer effectively meant that, if accepted, Mr. Miller would face a statutory maximum sentence of 20 years' imprisonment, rather than a statutory maximum of life imprisonment.

86. The government's plea offer also meant that Mr. Miller would face no mandatory minimum sentence, saving him from the 15-year mandatory minimum charged in the Indictment and 851 Enhancement.

87. After seven years of representation without a single in-person meeting with Mr. Miller, sometime around the first week of June, Mr. Brindley had a 15-minute in-person meeting with Mr. Miller regarding the proposed plea agreement.

88. Mr. Brindley failed to explain to Mr. Miller that the proposed plea lowered the statutory maximum he faced from life to 20 years.

89. Mr. Brindley failed to explain to Mr. Miller that the proposed plea dropped the 15-year mandatory minimum to zero.

90. During the meeting between Mr. Brindley and Mr. Miller, Attorney Brindley drove the conversation and ended the meeting by affirmatively telling Mr. Miller: "Fuck it, let's go to trial."

91. On June 4, 2024, at what was scheduled to be a plea hearing, Attorney Brindley appeared telephonically and asked the Court to waive Mr. Miller's presence. *United States v. Castaneda et al.*, 1:17-cr-319-4, ECF No. 390.

92. At the June 4, 2024 hearing, attorney Brindley (in the absence of Mr. Miller) informed the Court that Mr. Miller had declined the plea offer and the case would proceed to trial. *United States v. Castaneda et al.*, 1:17-cr-319-4, ECF Nos. 389 and 390.

93. Mr. Miller's trial began on June 11, 2024. ECF No. 398.

94. On June 14, 2024 – in the middle of Mr. Miller's trial – the government and Mr. Brindley appeared before Judge Kennelly to discuss the conflict issue and

conduct a conflict waiver colloquy in *Ferguson I.*[14] Yet, neither raised any conflict issue with Your Honor or Mr. Miller. *See* 6-14-24 Tr. at 503:7-20; *United States v. Ferguson*, 18 CR 734, ECF No. 529.

95. On June 20, 2024, Mr. Miller was convicted of possessing with the intent to distribute at least 400 grams of fentanyl, in violation of Title 21, U.S.C. § 841(a)(1), as charged in the Indictment. *United States v. Castaneda et al.*, 1:17-cr-319-4, ECF No. 408.

96. Mr. Miller now faces a 15-year mandatory minimum sentence, which is substantially higher than the zero mandatory minimum contained in the government's plea offer.

97. Mr. Miller now faces a statutory maximum sentence of life imprisonment, which is substantially higher than the 20-year statutory maximum contained in the government's plea offer.

## II. THE DEFENSE'S STATUS REPORT AND ISSUES FOR THE COURT'S CONSIDERATION

During the defense's investigation and the parties' meet and confer, a number of issues have arisen concerning Mr. Miller's requests of the government. The defense provides the following status to the Court and seeks the Court's guidance concerning the following:

**1. Order for the Government to Respond to Mr. Miller's Evidentiary Proffer:** The defense requests that the Court order the government to file a written response to Mr. Miller's Evidentiary Proffer. To the extent that the government challenges the factual

[14] The Seventh Circuit Court of Appeals had remanded and ordered Judge Kennelly to hold a conflicts colloquy because, perplexingly, Mr. Brindley was asserting his own ineffectiveness in Mr. Ferguson's habeas petition. Even more perplexing, Mr. Brindley filed a motion with Judge Kennelly in *Ferguson I* to continue the conflict waiver colloquy, citing Your Honor's ongoing trial in Mr. Miller's case. Seeking to delay the conflicts colloquy in *Ferguson I,* Mr. Brindley stated: "On June 11, 2024, the undersigned began a jury trial in *United States v. Castaneda et al* (1:17-cr-00319) before Judge Blakey . . . The undersigned will thus be unable to appear before this Court on June 14th for the scheduled h[e]aring in this case and asks that it be continued by approximately two weeks." *United States v. Castaneda et al.*, 1:17-cr-319-4, ECF No. 526. Judge Kennelly denied Mr. Brindley's request to continue the conflicts waiver colloquy.

assertions made in numbered paragraphs 1 through 97, *supra,* the government should be ordered to identify the controverted facts, the factual basis for its objection, and identify all documents and information within its possession, custody, or control that supports its objection. The government should be ordered to file its written response within 30 days.

**2. Whether Beau Brindley can be compelled to testify at the evidentiary hearing:** The government's January 5, 2025, letter to Mr. Brindley may have a chilling (un)intended effect on these proceedings. Although the government has subpoenaed Mr. Brindley to testify at the evidentiary hearing, it is uncertain whether he will invoke the Fifth Amendment. In its January 2025 letter, the government confirmed that Mr. Brindley was under investigation for "tax crimes" and expressly cautioned that the letter "should not be interpreted as an exoneration or a 'clean bill of health'" and "does not confer any protection against future investigative or prosecutorial action with respect to this or any other matter." If Mr. Brindley testifies, the defense intends to question him about conduct which the government may construe to be criminal, including $200,000 in cash payment that Mr. Miller made to him and a $25,000 cash payment Mr. Brindley required mid-trial. Presumably, such payments constitute taxable income. Given the statute of limitations for tax offenses and the government's carefully worded January 2025 letter, his risk of prosecution is more than theoretical. By simultaneously subpoenaing Mr. Brindley's testimony and brandishing unresolved criminal exposure, the government may have engineered a Hobson's choice: Mr. Brindley can either risk self-incrimination by testifying or protect himself by invoking the Fifth Amendment. That dilemma is of the government's own making and strikingly mirrors the conflicts issue Mr. Miller asserted in his substantive motion.

**3. Whether, pursuant to Subpart B of Part 16 of Title 28, Code of Federal Regulations, the government intends to prohibit former AUSA Matthew Kutcher or other DOJ employees from testifying at the Evidentiary Hearing**. *See United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951) (holding a subordinate federal employee cannot be compelled by subpoena to produce government documents—or punished for contempt for refusing—when the refusal is made under a valid agency regulation requiring the agency head's authorization).

**4. Scope of attorney-client privilege waiver:** During the parties' meet-and-confer, the government asked defense counsel to produce all communications between Mr. Brindley and Mr. Miller—including privileged communications. It bases this request on the assertion that Mr. Miller waived privilege when he attached attorney–client communications to his Rule 33 motion. That is incorrect. The screenshots included in Mr. Miller's motion are group text messages among Mr. Brindley, Mr. Miller, *and* Mr. Miller's girlfriend. Communications made in the presence of a third party who is not an agent of the client or counsel are not privileged. *See United States v. Evans*, 113 F.3d 1457, 1462 (7th Cir. 1997). To be sure, the defense will produce all Brindley–Miller communications relevant and responsive to the Court's inquiry and the controverted issues in his motion. However, the government's request for all communications is overbroad and would sweep in trial-strategy communications beyond the controverted facts at issue in these Rule 33 proceedings. To the extent disputes arise regarding scope or privilege, the defense respectfully requests the Court's *ex parte* review before any production.

**5. Status Report Regarding Mr. Miller's Medical Care and Bond:** On August 22, 2025, the Court ordered Mr. Miller to be released from the MCC on bond. ECF No. 516. Since his release, Mr. Miller has undergone a biopsy, and he is scheduled for a second biopsy to determine whether his abdominal tumor is cancerous. Mr. Miller is working with his medical care provider to determine when/if the abdominal tumor will be removed. Mr. Miller remains in significant pain. The defense will report the status of Mr. Miller's medical care and the results of the second biopsy when the results are received.

Respectfully submitted,

/s/ MiAngel Cody
MIANGEL CODY
TDC Law Office
1325 S. Wabash Ave., Suite 305
Chicago, IL 60605
Tel: 312-858-8330

/s/ Christopher Parente
Cheronis & Parente
140 S. Dearborn, Suite 404
Chicago, IL 60603
Tel: 773-458-4899

*Counsel for Kevin Miller*

Dated: September 11, 2025